Case No. **23-2394**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

### In re:

### BROOKE HENDERSON AND JENNIFER LUMLEY,

*Petitioners,*

### UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF MISSOURI,

*Respondent,*

### SCHOOL DISTRICT OF SPRINGFIELD R- 12, BOARD OF EDUCATION
### OF THE SCHOOL DISTRICT OF SPRINGFIELD R- 12, GRENITA
### LATHAN, YVANIA GARCIA-PUSATERI, AND LAWRENCE ANDERSON,

*Real Parties in Interest.*

---

On Petition for Writ of Mandamus from the United States District Court for the
Western District of Missouri,
The Honorable M. Douglas Harpool, District Judge
Case No. 6:21-cv-03219-MDH

---

### PETITION FOR WRIT OF MANDAMUS

---

**RECEIVED**

**JUN 0 7 2023**

**U.S. COURT OF APPEALS
EIGHTH CIRCUIT**

*FILED
JUN 07 2023
MICHAEL GANS
CLERK OF COURT*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iv

RELIEF SOUGHT ............................................................................. 1

ISSUES PRESENTED ........................................................................ 2

FACTS NECESSARY TO UNDERSTAND THE ISSUES PRESENTED ..... 3

    I.    The District Court's Grant of Summary Judgment and Fee
        Award in Defendants' Favor .................................................... 3

    II.   Petitioners' Appeal from those Orders ...................................... 4

    III.  Attorney Hermann's Statements Regarding the Court's
        Decisions ............................................................................... 4

    IV.  The District Court's Show Cause Orders and Petitioners'
        Responses ............................................................................... 5

        a.  The District Court's April 18, 2023 Show Cause Order ......... 5

        b.  The District Court's Second Show Cause Order ..................... 9

        c.  Petitioners' Motion to Refer or Recuse ................................ 11

        d.  The District Court claims to be "substantiating" its own
            allegations by orders to show cause in order to decide
            whether to make a referral to the *en banc* court. .................. 11

REASONS WHY THE WRIT SHOULD ISSUE .................................... 13

    I.    Standard ............................................................................... 13

    II.   Petitioners are clearly entitled to the writ because the District
        Court's investigation and effort to find probable cause on its
        own disciplinary grievance violates the local rules and due
        process, and would require recusal. ........................................ 14

    a.  Western District Local Rule 83.6 is Mandatory and prohibits the District Court from investigating to "substantiate" probable cause regarding its own allegations of attorney misconduct. .................. 14

    b.  Recusal is required as a matter of due process and under 28 U.S.C. § 455 to avoid the District Court serving as the judge of its own case. ............................... 20

        i.    The Second Show Cause Order places the District Court in the position to divine its own intent and determine if Ms. Hermann's statements regarding that intent are "true." ............................ 20

        ii.   Due process prohibits the District Court from "substantiating" its own complaint via an investigation intended to find probable cause of a violation. ...................................... 22

        iii.  Recusal is required under 28 U.S.C. § 455. .......... 26

III.  The District Court is interfering with this Court's appellate jurisdiction by forcing public disclosure of attorney work product on the fee issue, re-litigating whether *the District Court* approves the fee arguments Petitioners now present to *this Court* on appeal. ............................... 29

IV.  Petitioners Lack Other Adequate Means to Attain the Relief Sought. ................................................ 31

CONCLUSION ................................................ 32

CERTIFICATE OF COMPLIANCE .......................... 33

CERTIFICATE OF SERVICE ................................ 34

APPENDIX ................................................... 35

Appellate Case: 23-2394    Page: 3    Date Filed: 06/07/2023 Entry ID: 5285178

# TABLE OF AUTHORITIES

**Case**                                                                                     **Pages**

*Baribeau v. City of Minneapolis,*
    596 F.3d 465 (8th Cir. 2010) .............................................................. 19

*Cooke v. United States,*
    267 U.S. 517 (1925) .......................................................................... 24, 25

*Griggs v. Provident Consumer Discount Co.,*
    459 U.S. 56 (1982) .................................................................................. 30

*Henderson v. Springfield R-12 School District*,
    Case No. 23-1880 (8th Cir. Filed Apr. 27, 2023) ............................ 29, 30

*In re Fletcher*,
    424 F.3d 783 (8th Cir. 2005) ...................................................... 15, 19, 20

*In re Lombardi*,
    741 F.3d 888 (8th Cir. 2014) .................................................................. 13

*In re Murchison,*
    349 U.S. 133 (1955) ................................................................................ 23

*Missouri v. Coeur D'Alene Tribe*,
    164 F.3d 1102 (8th Cir. 1999) ................................................................ 30

*Offutt v. United States,*
    348 U.S. 11 (1954) ............................................................................ 23, 25

*Pfizer, Inc. v. Lord*,
    456 F.2d 532 (8th Cir.), cert. denied, 406 U.S. 976, (1972) ................. 14

*Standing Comm. v. Yagman,*
    55 F.3d 1430 (9th Cir. 1995) .................................................................. 25

*United States Dep't of Justice v. Mandanici,*
    152 F.3d 741 (8th Cir. 1998) .................................................................. 15

Appellate Case: 23-2394   Page: 4   Date Filed: 06/07/2023 Entry ID: 5285178

*United States v. Queen*,
  433 F.3d 1076 (8th Cir. 2006) .......................................... 30

*Willhite v. Collins,*
  459 F.3d 866 (8th Cir. 2006) ............................................ 15

*Williams v. Pennsylvania,*
  579 U.S. 1 (2016) ....................................................... 23

## Statutes

28 U.S.C. § 455 ............................................................ *passim*

28 U.S.C. § 2071 .......................................................... 14

42 U.S.C. § 1983 .......................................................... 3

42 U.S.C. §1988 ........................................................... 29

## Court Rules

Mo. Sup. Ct. R. 4-1.6 ..................................................... 18

Western District L.R. 83.6 ................................................ *passim*

Appellate Case: 23-2394    Page: 5    Date Filed: 06/07/2023 Entry ID: 5285178

# RELIEF SOUGHT

The Honorable M. Douglas Harpool (W.D. Mo.) is interfering with this Court's appellate jurisdiction, and violating controlling local rules and due process, by investigating his own disciplinary complaint that Petitioners' counsel, Kimberly Hermann, criticized two of his decisions *after* appealing them to this Court. The statements which aggrieved the District Court were strongly critical, but advance the same points that Petitioners (Plaintiffs below) and numerous amici now make on appeal:[1] that the court's award of over 100% of fees to a Section 1983 government defendant was extraordinary, driven by impermissible considerations, and has the intent and effect of chilling civil rights claims like Petitioners'.

In serving as investigator of its own complaint, allegedly to decide whether its own allegations are "substantiated," the District Court violates Local Rule 83.6, which assigns such investigations and probable cause findings **solely** to the *en banc* court. This avoids recusal requests and due process violations triggered by complainant-judges wearing multiple hats. *See* Point I, below. Further, the District

---

[1] The Petitioners are Appellants in Case No. 23-1374, (8th Cir., filed Feb. 27, 2023, the lead appeal, challenging the District Court's grant of summary judgment against Petitioners and its award of attorneys' fees via a supplemental notice); and Case No. 23-1880 (filed on April 27, 2023, and challenging an award of costs).

1

Court interferes with this Court's appellate jurisdiction by forcing Petitioners to publicly disclose attorney work product on the fee issue, re-litigating whether *the District Court* approves the fee arguments Petitioners now present to *this Court* on appeal. *See* Point II, below.

Petitioners seek a writ of mandamus to compel the District Court to: (a) withdraw its Order demanding a **Friday, June 9, response**, to questions about counsel's research on the attorney fee issue; and (b) terminate its investigation to "substantiate" and make probable cause findings on its own grievance.

## ISSUES PRESENTED

1)  Whether the District Court must follow Local Rule 83.6(d), requiring that any disciplinary investigation to "substantiate" allegations and establish reason to believe misconduct occurred must be conducted and controlled by the Western District *en banc*, particularly where the District Court is the complaining and aggrieved party?

2)  Whether the District Court has jurisdiction to compel Petitioners to disclose their attorney work product and otherwise investigate and determine whether it is satisfied with Petitioners' development of the same argument they are now making in this Court under its appellate jurisdiction, to wit, that the District Court sought to chill civil rights claims when it awarded fees to a civil rights defendant under 42 U.S.C. § 1988?

2

**FACTS NECESSARY TO UNDERSTAND THE ISSUES PRESENTED**

**I.    The District Court's Grant of Summary Judgment and Fee Award in Defendants' Favor**

On August 18, 2021, the Plaintiffs below (Appellants in separate appeals[2] and now, Petitioners here), educators represented by Kimberly S. Hermann and Southeastern Legal Foundation, filed a complaint alleging various First Amendment claims under 42 U.S.C. § 1983, including, *inter alia*, compelled speech and content-based discrimination. The complaint sought declaratory and injunctive relief against, among others, the Springfield Public Schools. The Parties filed cross-motions for summary judgment, and on January 12, 2023, the District Court denied Petitioners' motion and granted Defendants'. The District Court concluded, *sua sponte*, that Petitioners' "claim and theory" was frivolous, holding that even if Petitioners had standing, the court would still rule in Defendants' favor. It then invited the Defendants to file a motion for attorneys' fees and awarded $312,869.50, over 100% of their request. Petitioners filed their notice of appeal on the merits February 10, 2023, and appealed the award of attorney's fees on April 7, 2023.

---

[2] Petitioners' brief procedural history does not cite, and their Appendix does not include, all of the underlying case pleadings, which are included in the Appendices to their appeals of the decisions in their own cases and are not included here to avoid duplication and expense, and to save time. The Orders to Show Cause and Responses at issue, however, are included.

3

## II.     Petitioners' Appeal from those Orders

Petitioners' appeal from the District Court's orders granting summary judgment and Defendants' motion for attorney's fees are currently pending before this Court. Petitioners have garnered broad support for their appeal on the fee issue. Over 30 amici, including 16 states led by Missouri, support Petitioners. For example, ADF and the ACLU argued together against the District Court's award. *See* Amicus Brief of Alliance Defending Freedom, American Civil Liberties Union, et al. as Amici Curiae Supporting Appellant, Henderson v. Springfield R-12 School District, No. 23-1374 (8th Cir. May 18, 2023). These amici showed that awarding fees to Defendants will chill civil rights litigation and "frustrate the goals of section 1983." *Id*. at 16. Amici also defend Petitioners' underlying First Amendment claims as non-frivolous, *id*. at 20, and assert the District Court made important errors of law in awarding Defendants attorney's fees.

## III.     Attorney Hermann's Statements Regarding the Court's Decisions

After appealing the District Court's decisions, Attorney Hermann made three sets of statements criticizing them. In the first, from an April 11, 2023, press release by Southeastern Legal Foundation, Hermann said: "This is an effort by a lone agenda-driven federal judge to deny concerned teachers and parents the right to seek redress in court and to protect so-called 'anti-racist' training in Missouri's public schools." (the "April 11th Statement").

4

In the second, from an April 12, 2023, Newsmax interview, Hermann says the Court's decision "is closing the courthouse doors" and "this will prevent every single person that has a potential First Amendment claim against the government…from ever being able to bring a lawsuit" (the "April 12th Statement"). The Newsmax host suggested amicus help for Petitioners' appeal currently pending before this Court; asking, "How can we help? How can we get ahold of these guys?"

The third statement, made in an April 13, 2023, Fox News interview said that the "point" of the Court's fee ruling "is to chill speech" and that the "intent of [the decision] is to stop parents and teachers from ever bringing a lawsuit again" (the "April 13th Statement").

## IV.  The District Court's Show Cause Orders and Petitioners' Responses

### a.  The District Court's April 18, 2023 Show Cause Order

On April 18, 2023, the District Court *sua sponte* issued a Show Cause Order [Appx. 1-2] identifying Ms. Hermann's three statements above and ordering Petitioners:

> [T]o show cause no later than April 20, 2023 as to how Attorney Hermann's statements fail to violate Georgia Rule of Professional Conduct 3.6 and Missouri Rules of Professional Conduct 4-3.6 and 4-8.2, made applicable through United States District Court for the Western District of Missouri Local Rules 83.5 and 83.6, and why sanctions should not be imposed for any such violation.

[Appx. 2].

5

Petitioners retained the undersigned counsel to respond on May 4, 2023. [Appx. 3-42]. Southeastern Legal Foundation also removed all the Statements from its website, and declined and withdrew from further interviews, and Petitioners' counsel repeatedly represented that it was taking all of these steps in a public filing. Appx. 10. Attorney Hermann also apologized to the District Court in a separate letter. [*Id*; Appx. 50]. Petitioners' response showed that Attorney Hermann's statements complied with Rules 3.6 and 8.2.

Tracking the language of Rule 3.6, Petitioners showed that Ms. Hermann neither "knew" nor "reasonably should have known" that the statements "will have a *substantial* likelihood of *materially prejudicing* an adjudicative proceeding in the matter," because, having been made after the filing of the Notices of Appeal, they were far removed from the type of matter in which courts apply Rule 3.6. (emphasis added). Specifically, the rule is almost never applied in a civil, bench-tried case with few factual disputes (and none material), and if the matter returns to the District Court, it will likely not be for at least another six months once the appeals are resolved, in which case it could not have a substantial likelihood of prejudicing a proceeding. [Appx 8-9; 15-18] (citing *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1051 (1991)). Ms. Hermann's statements were rhetoric and opinion, not capable of falsification. Petitioners further showed that stretching these rules to apply to these statements would pose significant First Amendment problems, and that the Supreme

6

Court interprets ethical rules governing attorney speech so as to accord with the First Amendment. *See id.*

With respect to Rule 8.2, which states that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge," Petitioners showed as follows:

a. The Statements criticizing the basis for the District Court's decision were not statements concerning the "qualifications or integrity of a judge." [Appx. 19-28].

b. The accuser bears the burden of establishing falsity. *Id.*

c. Related to point b, statements of opinion or hyperbole are not statements of fact and therefore cannot fall within the rule. The context was clear that the Statements were an attorney's opinion criticizing the basis for this Court's decision. The basis for this opinion was detailed at length with cites to the District Court's own statements on the record and in its decisions. *Id.*

d. If the District Court were to resolve all of the above against the speaker and reach the rule's scienter requirement—that the lawyer must know the statement to be false or must speak with reckless disregard—the District Court should apply the subjective First Amendment-based standard from which the language of the rule was derived, rather than cases like *Matter of Westfall*, 808 S.W.2d 829, 837 (Mo. banc 1991) that hold a less-protective, objective standard is required. [Appx. 20-22]. Under either standard, the Statements passed muster. [Appx. 20-28].

e. If despite all of this, the District Court was inclined to impose sanctions, Petitioners challenged the constitutionality of Rule 8.2. [Appx. 29-32].

f. If the District Court intended to investigate Attorney Hermann for violations of the Rules of Professional Conduct, the Western District *en banc* must assume control under Local Rule 83.6. [Appx. 32-35].

Importantly, Petitioners detailed the District Court's open and honest reliance on its own policy views—what Attorney Hermann later characterized as an "agenda" in reaching summary judgment and fee decisions in a groundbreaking case. At the initial scheduling conference, the court had asked Plaintiffs' counsel, "…[D]oesn't a school district in fact have an affirmative duty to see that racial justice occurs within its school district?" [Appx. 25 at n. 3]. As counsel began to answer a follow-up question, the District Court interrupted to state, "Right. A bunch of the people who don't like the modern trend of race relations are now filing a bunch of lawsuits." The following day, the District Court struck several paragraphs from Petitioners' complaint *sua sponte*, stating, "Plaintiffs appear to use these paragraphs only to imply that SPS' views on racism, racial discrimination, and related issues are incorrect and that Plaintiffs' own differing views are correct. Such statements are purely political advocacy and are therefore clearly immaterial and impertinent as required under Rule 12(f)." [Appx. 26 at n.4]. These themes returned in the District Court's fee decision, where it found Plaintiffs' allegations of injury arising from anti-racism training frivolous because they were "political," making untenable Defendants' mere "management of a large, urban school district" using "lawful

8

training." [Appx. 24-25] (citing opinion). The District Court concluded that Petitioners' mere filing of a civil rights claim "harmed students." *Id*.

Petitioners responded that, based on the District Court's own statements and decisions, Petitioners concluded, it was fair for counsel to say the court was driven by a policy "agenda"—specifically that training like the ones at issue merely taught "racial justice" that districts have an "affirmative obligation" to teach, and challenges to it disrupt legitimate "management" of the district and needed to be stopped. Respondents submitted that the District Court expressed that his intent and effect was to ensure similar lawsuits were not brought again, and that was the basis for the statements. *Id*.

### b. The District Court's Second Show Cause Order

On May 24, 2023, the District Court issued a Second Show Cause Order that found Petitioners' May 4th response "fails to address the main issue at hand," and "fails to adequately address this matter." [Appx. 48]. It identified two specific concerns with Petitioners' response. First, it faulted Attorney Hermann's letter of apology because it "fail[ed] to directly address whether Attorney Hermann's words are false." [Appx. 47]. Second, it stated that "the focal issue is how Attorney Hermann's specific words about this Court do not reflect a reckless disregard for truth." [Appx. 48]. Relying on this point, it ordered "Attorney Hermann to file" by June 9, 2023, a "supplementary response" "specifically addressing whether [the

Statements]… were true and the basis for such belief." [Appx. 49]. The District

Court listed specific facts Ms. Hermann it thought must show to establish "her belief

that the statements were true," including:

- Specifically addressing whether particular statements made by Attorney Hermann, identified in the original Show Cause Order, were true and the basis for such belief;
- Identifying in detail any research, interviews, or findings, supporting her belief that her statements were true, including prior orders in other cases;
- Identifying any orders by the District Court awarding attorney fees in favor of a party against whom a constitutional claim was filed, which Attorney Hermann considered prior to making her statements;
- Identifying any orders by the District Court awarding attorney fees in favor of a party filing a constitutional claim, which Attorney Hermann considered;
- Specifically addressing why Attorney Hermann's statements referred to claims by parents rather than claims by public school employees, subject of the instant litigation; and,
- Identifying any case involving parents' constitutional rights considered by Attorney Hermann in making the statements, including any case in which the District Court awarded attorney's fees against parents.

[Appx. 49].

The District Court did not address Petitioners' arguments that Ms. Hermann's

words were opinions that could not be proven true or false; that they were opinions

grounded in her honest assessment of the proceedings in this case; or that the

Supreme Court in *Gentile* had determined that comments made *prior* to a *criminal*

10

trial were protected by the First Amendment and would not result in material prejudice to the proceeding because they were uttered six-months prior.

### c. Petitioners' Motion to Refer or Recuse

Now keenly aware that the District Court intended to investigate the court's own complaint against Ms. Hermann by determining if her criticism of the court's fee decision matched the court's perception of its own intent, Petitioners filed a Motion on June 2, 2023, asking the District Court to surrender the investigation to the Western District *en banc*, or recuse. [Appx. 62-73]. Petitioners also sought an administrative stay of their response pending the District Court's decision. [Appx. 73].

### d. The District Court claims to be "substantiating" its own allegations by orders to show cause in order to decide whether to make a referral to the *en banc* court.

On June 6, 2023, the District Court denied Petitioners' Motion, requiring that they respond to its Second Order by **Friday, June 9, 2023**. ["Third Order," Appx. 75-78] (emphasis added). Now recognizing that Local Rule 83.6 controls, the Court nonetheless argued that it retained authority "to substantiate whether it is reasonable to believe a violation of Missouri Rule of Professional Conduct 4-8.2 has occurred" as a kind of precursor to a referral to the *en banc* court. [Appx. 76]. It explained what new areas the Second Order's expanded investigation would probe:

> This requires a basic understanding of why certain statements were made and how, if at all, the attorney believed them to be true. Without

11

such an understanding, it remains impossible to determine whether sufficient evidence exists to pursue a fuller investigation and disciplinary proceeding at the *en banc* level pursuant to Local Rule 83.6.

*Id*. The District Court did not rule out additional orders or investigation. *Id*.

Because the District Court asserts power to continue issuing orders to uncover facts "substantiating" its own disciplinary grievances, and these orders compel public disclosure of Petitioners' counsel's work product on the very issues they are currently litigating in the Eight Circuit, a writ should issue.

12

## REASONS WHY THE WRIT SHOULD ISSUE

Under the local rules, the District Court lacks any authority to investigate Attorney Hermann's work product supporting her criticism of its award of attorney fees while she uses that work product to litigate the very same fee issue in the Eighth Circuit. The District Court's authority is specifically circumscribed by Local Rule 83.6, which places the power to control and direct an investigation to "substantiate" disciplinary investigations, and to make a finding of "probable cause," exclusively with the *en banc* court—not with a complaining, aggrieved judge. Here, the District Court is taking it upon itself to substantiate the allegations, of which the District Court itself is the complainant. To allow this to continue not only violates the local rule, it violates 28 U.S.C. §455 and is a failure of due process.

### I.    Standard

"Extraordinary writs like mandamus are 'useful safety valves for promptly correcting serious errors.'" *In re Lombardi*, 741 F.3d 888, 893 (8th Cir. 2014) (en banc) (*quoting Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)). To grant a writ of mandamus, this court weighs three factors: (1) the "petitioning party must satisfy the court that he has 'no other adequate means to attain the relief he desires;'" (2) "his entitlement to the writ is 'clear and indisputable;'" and (3) "'the issuing court, in the exercise of its discretion, must be satisfied that

13

the writ is appropriate under the circumstances.'" *Id.* at 894 (*quoting Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004))

In *Pfizer, Inc. v. Lord*, 456 F.2d 532 (8th Cir.), cert. denied, 406 U.S. 976, (1972), the Eighth Circuit held that mandamus may be utilized to review a district judge's refusal to recuse himself. And in *United States v. Poludniak*, 657 F.2d 948 (8th Cir. 1981), this Court again reviewed the standards for recusal, this time in light of 28 U.S.C. § 455(a). On a writ of mandamus, the District Court's denial of recusal is reviewed for abuse of discretion. *United States v. Delorme*, 964 F.3d 678, 681 (8th Cir. 2020).

## II. Petitioners are clearly entitled to the writ because the District Court's investigation and effort to find probable cause on its own disciplinary grievance violates the local rules and due process, and would require recusal.

### a. Western District Local Rule 83.6 is mandatory and prohibits the District Court from investigating to "substantiate" probable cause regarding its own allegations of attorney misconduct.

The Western District of Missouri has promulgated local rules which provide the sole mechanism for the District Court to investigate, adjudicate, and, if appropriate, punish attorneys for violations of the Rules of Professional Conduct. *See* 28 U.S.C. § 2071(a) (statutory authority to promulgate local rules). This Court must compel the District Court to immediately comply with Local Rule 83.6(d)(2) by ceasing its own investigation. That is because ***it is the district court en banc*** that controls and conducts investigations to "substantiate" allegations of misconduct; that

14

determines "reason to believe" violations have occurred (*i.e.*, probable cause); and that conducts further proceedings based on responses to orders to show cause.

Adherence to the local rules governing attorney discipline is particularly important. Due process requires, at a minimum, notice and an opportunity to be heard, "and that the district court follow its procedural rules governing attorney discipline." *In re Fletcher*, 424 F.3d 783, 792 (8th Cir. 2005) (commending Western District for "assiduously" following its own rules by having matter investigated by *en banc* court rather than complaining judges). Crucially, "a district court's inherent power to discipline attorneys who practice before it does not absolve the court from its obligation to follow the rules it created to implement its exercise of such power." *United States Dep't of Justice v. Mandanici*, 152 F.3d 741, 745 n. 12 (8th Cir. 1998); *see also Willhite v. Collins*, 459 F.3d 866, 871 (8th Cir. 2006). When confronted with a district court's failure to follow local rules regarding attorney discipline, this Court has remanded with explicit instructions to "follow the procedures of its local rules." *Id*.

Western District Local Rule 83.6(d) articulates in detail the mandatory and exclusive procedure for investigating allegations of misconduct and conducting disciplinary proceedings. "When misconduct, or allegations which, ***if substantiated***, would constitute misconduct… come to the attention of a judge, whether by complaint or otherwise… the Judge may initiate a disciplinary investigation." W.D.

15

L.R. 83.6(d)(1) (emphasis added). Importantly, although any individual judge may *initiate* an investigation, the Local Rules do not contemplate or provide for an individual judge to also *conduct* and direct the investigation. Nor do they allow the District Court to do the "substantiating" itself, adjudicate the issue of probable cause, and only ***then*** refer the matter to the *en banc* court. The rule is specific in this regard. Instead, this investigatory role and the probable cause finding is solely vested in the Western District *en banc*. *See* W.D. L.R. 83.6(d)(2)(A)-(C).

Once an investigation is "initiated" by a district court, the role of the individual judge ceases and the Court *en banc* is presented with four options. First, it may refer the matter to an attorney to serve as a special master. W.D. L.R. 83.6(d)(2)(A). That special master may then "perform any appropriate task, including investigating the case, determining whether probable cause exists to believe that an attorney has violated rule 83.6(c), prosecuting a formal disciplinary proceeding, and formulating another appropriate recommendation." W.D. L.R. 83.6(d)(2)(A)(i). Importantly, after the special master conducts an investigation, the special master "must demonstrate" any recommendation that probable cause be found "to the Court en banc." W.D. L.R. 83.6(d)(2)(A)(iii). The Western District *en banc* then directs the attorney to show cause why he or she should not be disciplined, identifying any factual disputes or matters in mitigation. *Id*.

16

Second, if the Western District *en banc* does not appoint a special master, the court *en banc* "must undertake its own investigation." W.D. L.R. 83.6(d)(2)(B). It then determines whether there is probable cause to believe that the attorney has violated Local Rule 83.6(c). *Id*. If the court *en banc* determines misconduct has occurred, it must then serve the show cause order—an order articulating a short and plain statement of each ground for discipline and directing the respondent to show cause why he or she should not be disciplined. *Id*.

Third, the *en banc* court may refer the matter to the disciplinary authorities for the appropriate state bar to investigate. W.D. L.R. 83.6(d)(2)(C). Fourth, at any time, it may conclude that an investigation is unwarranted and no disciplinary action will be taken.

The Local Rules vest authority in the Western District *en banc* (or a special master it appoints) to actually conduct an investigation, and confer no investigatory authority on any individual judge, let alone a complaining, aggrieved judge. Individual judges can *initiate*—not conduct—investigations. This makes sense. As explained more completely below, due process concerns proliferate when a complainant-judge then controls the ensuing investigation and probable cause finding challenging the accuracy and propriety of statements made about that same judge. *See* Section II(b)(ii), *infra*. And as a practical matter, where (as in the Second Show Cause Order, Appx. 45) the investigation forces a party to publicly disclose

17

its confidential attorney work product to the complaining party (the District Court) and the opposing party while that very matter is being litigated on appeal, it directly interferes with appellate jurisdiction by impinging upon counsel's ability to zealously litigate and counsel's duty to its own client to maintain confidential information. *See, e.g*., Mo. Sup. Ct. R. 4-1.6. It also places the District Court in the position of reviewing internal work product on a matter that may come back before that very District Court were the matter to be remanded and not reassigned. Concerns like these surely motivated the Western District to adopt the local rule.

The District Court's Third Order acknowledges, but misreads, W.D. L.R. 83.6(d)(1). That rule merely explains ***when*** the District Court may "initiate" an investigation: "[w]hen misconduct, or allegations which, if substantiated, would constitute misconduct, on the part of an attorney admitted to this Bar come to the attention of a judge, whether by complaint or otherwise..." *Id*. It does not authorize complaining district courts to perform the "substantiating"—the investigating—after they initiate the complaint but before the *en banc* court assumes control. Rather, the "initiation" accomplished, the *en banc* court determines how "allegations" will be investigated to determine if they are "substantiated" and "constitute misconduct." W.D. L.R. 83.6(d)(2)(A) & (B). That *en banc* investigation is conducted in ***only*** two ways: by special master or by the en banc court itself. *Id*.

18

Either way, the probable cause finding is also made by the *en banc* court and is an important procedural protection that triggers a show cause order ***from the en banc court***. W.D. L.R. 83.6(d)(2)(B). Nonetheless, the District Court also misreads this section, claiming to be the entity to decide probable cause, that is, whether it is "reasonable to believe a violation of [the disciplinary rules] has occurred." [Appx. 76]; compare *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) ("The substance of all the definitions of probable cause is a reasonable ground for belief of guilt."). The District Court promises that after making this finding, it will decide whether to refer the matter to the *en banc* court, state disciplinary authorities, or both. *Id*. Again, a state bar referral is the *en banc* court's function (W.D. L.R. 83.6(d)(2)(C)), not a mere option for a district court that wrongly positions itself as gatekeeper for the *en banc* court.

Though the District Court may have had discretion to *initiate* an investigation when Attorney Hermann's statements came to its attention, that was accomplished— at most—with its First Order and Petitioners' substantial response briefing the law and citing the District Court's statements on the record and its decisions as the basis for her Statements. This was the procedure followed in *Fletcher*, 424 F.3d at 789, where Chief Judge Whipple issued a show cause order, all parties submitted one brief relating to allegations in which the judge was not the complainant or aggrieved party, and he "made no further ruling." *Id*. Instead, this first response completed, the

19

*en banc* court assumed control, appointing a special master to investigate without the involvement of the referring judges—let alone any aggrieved judge. *Id.* at 789, 792-793. That is the process W.D. L.R. 83.6 requires, and it is the process the District Court should have followed here as a matter of due process. *See Fletcher*, 424 F.3d at 792.

### b. Recusal is required as a matter of due process and under 28 U.S.C. § 455 to avoid the District Court serving as judge of its own case.

The District Court could not become the investigator of its own complaint and make a probable cause determination where it was also the aggrieved party, and where the court's own subjective intent in issuing its fee ruling was treated as an evidentiary fact and element of the offense. Even aside from Local Rule 83.6(d), recusal was required as a matter of due process and under 28 U.S.C. § 455.

### i. The Second Show Cause Order places the District Court in the position to divine its own intent and determine if Ms. Hermann's statements regarding that intent are "true."

The Second Order was the first time the District Court revealed its plan for proceeding on several points. These included the following:

(1) The burden would be placed on Attorney Hermann to *disprove* the elements of Rule 8.2, including proving truth, rather than placing the burden on the accuser to prove the element of falsity;

(2) The "focal point" on Rule 8.2 has narrowed to the questions of (a) falsity and (b) Ms. Hermann's degree of knowledge of falsity.

(3) As a corollary to point 2, the Statements will now be construed as provably true or false statements of fact about the District Court's subjective intent in

20

imposing fees. The controlling question that Ms. Hermann must now prove is "true," before the District Court, is what the District Court subjectively intended to do when it imposed fees.

(4) Also, as a corollary to point 2, the District Court has necessarily decided every other Rule 8.2 issue regarding the Statements against Ms. Hermann. This includes: (a) construing Statements criticizing the District Court's decision as an attack on its integrity or qualifications; (b) deciding that the Statements were not opinions or rhetorical hyperbole; and (c) deciding that, in proving the "truth" of any Statement about the District Court's "intent," Ms. Hermann cannot rely on the District Court's statements in the record in the underlying case or the text of the District Court's decisions themselves. Instead, in order to avoid discipline under Rule 8.2, Ms. Hermann must now establish to the District Court's satisfaction that the its own prior decisions evidence a trend in favor of chilling constitutional claims, and that this trend justifies Ms. Hermann's statement about this particular decision.

(5) For purposes of Rule 3.6, the District Court is at least considering its own reaction to the Statements upon potential remand as "material prejudice" in an ongoing "proceeding."

Thus, the District Court clearly views Ms. Hermann's Statements as expressing a negative view of its own integrity. It intends to treat her criticism of the District Court's large fee award as a provably true or false statement regarding its subjective "intent." The District Court will then evaluate truth or falsity by examining its own subjective intent. The District Court will also establish what parts of its own written decisions and statements on the record in this case are sufficient to controvert the District Court's own pre-existing view of its subjective intent, and which of its own decisions or statements were fair for Ms. Hermann to consider. All of these decisions necessarily make the District Court the judge of its own case.

Likewise, with respect to Rule 3.6, the District Court for the first time suggests that even in a civil, non-jury trial without substantial disputes of fact that has now left the District Court and is before this Court, the District Court might find itself in a position of "material[] prejudice" in a potential remand at least six months from now. Although it is rare for a civil bench trial to ever implicate Rule 3.6, particularly long after extrajudicial statements are made, this District Court's mode of analysis—weighing its own degree of likely prejudice, a personal factor known only to it—once again makes it the judge of its own case. As discussed below, these factors not only underlie W.D. L.R. 83.6, they show that based on the revelations in the Second Order, recusal was appropriate.

ii. **Due process prohibits the District Court from "substantiating" its own complaint via an investigation intended to find probable cause of a violation.**

Given the tripartite role assumed by the District Court as (1) the complainant having accused Ms. Hermann of making Statements which violate the Rules of Professional Conduct, (2) the repositor of the sole evidence of its own intent in granting summary judgment and assessing attorney's fees, and (3) the investigator and adjudicator of whether there is reason to believe Ms. Hermann's Statements regarding its own subjective intent were "false," and whether such false statement was reasonable, due process requires recusal. The *en banc* court, uninvolved with the underlying litigation and not the subject of the Statements, must direct the

22

investigation to "substantiate" whether there is reason to believe Ms. Hermann's statements violate the Rules of Professional Conduct, including, if necessary, by determining the District Court's actual intent in issuing the relevant orders.

Due process guarantees "an absence of actual bias" on the part of a judge. *In re Murchison*, 349 U.S. 133, 136 (1955). "To establish an enforceable and workable framework, the Court's precedents apply an objective standard that, in the usual case, avoids having to determine whether actual bias is present." *Williams v. Pennsylvania*, 579 U.S. 1, 8-9 (2016). The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, "the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Id.* (citing *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009)).

The Supreme Court has determined that an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case. *See Murchison*, 349 U.S. at 136–137. This objective risk of bias is reflected in the due process maxim that "no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." *Id.* at 136.

The risk is at its apogee when the statements at issue touch personally on the judge's qualities, characteristics, or actions, such that the judge may become "personally embroiled" in the outcome of the charge. *See Offutt v. United States*,

23

348 U.S. 11, 17 (1954). In reversing a contempt conviction, the Supreme Court noted

the special consideration due when the potentially offending words concern the same

judge presiding over the contempt proceeding:

> Another feature of this case seems to call for remark. The power of contempt which a judge must have and exercise in protecting the due and orderly administration of justice, and in maintaining the authority and dignity of the court, is most important and indispensable. But its exercise is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions. This rule of caution is more mandatory where the contempt charged has in it the element of personal criticism or attack upon the judge. The judge must banish the slightest personal impulse to reprisal, but he should not bend backward, and injure the authority of the court by too great leniency. The substitution of another judge would avoid either tendency, but it is not always possible. Of course, where acts of contempt are palpably aggravated by a personal attack upon the judge, in order to drive the judge out of the case for ulterior reasons, the scheme should not be permitted to succeed. But attempts of this kind are rare. All of such cases, however, present difficult questions for the judge. All we can say upon the whole matter is that, where conditions do not make it impracticable, or where the delay may not injure public or private right, a judge, called upon to act in a case of contempt by personal attack upon him, may, without flinching from his duty, properly ask that one of his fellow judges take his place.

*Cooke v. United States*, 267 U.S. 517, 539 (1925) (internal citations omitted).

Rule 8.2 is only violated if an attorney makes a statement which reflects

personally on a judge, that is, "a statement that the lawyer knows to be false . . .

concerning the qualifications or integrity of a judge[.]" (emphasis added). Here, the

District Court takes issue with statements calling it a "lone agenda-driven federal

judge" and asserting that its decisions in this case will "clos[e] the courthouse

24

doors." *See* First Show Cause Order, [Appx. 1-2]. Because we know the District Court must decide—and has decided—that it perceives this as a factual attack on its very "integrity," rather than as an opinion, hyperbole, or analysis criticizing the basis for the decision, this implicates the complainant judge precisely in the areas where the Supreme Court in *Cooke* and *Offutt* warned due process may be offended: the same judge that is the subject of the statements investigates and applies the "reason to believe" standard to their character and truthfulness, as well as to the mental state of the attorney making the statements.

Additionally, the First Amendment requires that the burden be placed on the complainant to prove to a neutral factfinder each element of a Rule 8.2 disciplinary violation, including falsity and the speaker's requisite mental state. *See* [Appx. 19-21] (citing, *inter alia*, *Standing Comm. v. Yagman*, 55 F.3d 1430, 1438 (9th Cir. 1995). Yet here, the District Court is the complainant and has shifted the burden to Ms. Hermann to prove to it that her Statements about its own intent were not false, and that they were objectively reasonable.

Due process and the First Amendment considerations implicated in subjecting out of court political speech to potential reprimand require that Ms. Hermann be afforded the full process due under these unique circumstances by having a neutral investigator direct the process of "substantiation" and decide whether she violated the Rules of Professional Conduct.

25

### iii. Recusal is required under 28 U.S.C. § 455.

Even without Local Rule 83.6, the District Court's recusal from investigating its own disciplinary grievance is required by the general recusal statute, which provides, in relevant part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> > (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
>
> [. . .]

28 U.S.C. § 455.

Here, subsection (a) is the catch-all rule, and subsection (b)(1) is one of several specific provisions that overlap with it to some degree. Starting with subsection (b)(1), the District Court has "personal knowledge of disputed evidentiary facts concerning the proceeding" because under the inquiry it has set up under Rule 8.2, only it can truly know the "factual" question of its own subjective intent in awarding fees.[3] To be clear, Petitioners maintain that this is not a matter of

---

[3] Such personal knowledge need not be derived from an extrajudicial source. *See Liteky v. U.S.*, 510 U.S. 540, 552(1994) ("Recusal is required *whenever* there exists
(continued...)

Appellate Case: 23-2394    Page: 31    Date Filed: 06/07/2023 Entry ID: 5285178

fact at all under Rule 8.2 and is instead counsel's own fair opinion and analysis about the Court's order awarding fees—analysis echoed in substantial Eighth Circuit briefing by Petitioners and numerous amici. Yet the District Court's Second Show Cause Order makes clear that it disagrees: under the disciplinary theory it is now investigating, the District Court's own subjective intent has become the key "fact." No party should be in a position of having to prove to a factfinder the opposite of what the factfinder has already decided with firm conviction: that very factfinder's own subjective intent. That is particularly true where the factfinder has already concluded that the "intent" directly implicates his own professional integrity and qualifications. The District Court's conclusory ruling that it could be unbiased was devoid of explanation. [Appx. 77].

The problem under Rule 3.6 is similar: the District Court is considering whether its own views regarding the Statements it found in the media—views it might hold six months from now or later, if the case is remanded to the District Court—can render it so deeply biased against Petitioners that it results in "material

---

a genuine question concerning a judge's impartiality, and not merely when the question arises from an extrajudicial source.") (emphasis original). Nonetheless, the District Court's internal convictions about its subjective intent when it awarded fees are untestable and derive from nowhere but the District Court itself, and so by definition they are an "extrajudicial source," even if they are partially derivative of a court proceeding.

prejudice." Again, only one person knows the answer to that question, and yet that same person sits as the investigator for "substantiating" its own allegations as having probable cause. Further, if it were possible—let alone substantially likely—that media comments could exert such influence, recusal is all the more proper.

Finally, for the reasons set forth above, this has become a matter in which this District Court's impartiality might reasonably be questioned. The District Court has now decided, contrary to Ms. Hermann's intent as expressed in her apology letter and Petitioners' Response, that the Statements implicated its very integrity or qualifications: the core threshold inquiry for Rule 8.2. Any person's impartiality would reasonably be questioned in deciding whether criticism of his or her own integrity or qualifications had accurately struck home. And consistent with what would be expected from someone who feels indignation that their integrity has been impugned and must be vindicated, the District Court has now shown that it views the stakes as very high: its Second Show Cause Order shifts the inquiry from the District Court's particular decision—the subject of Ms. Hermann's actual Statements—into an overall examination of the District Court's history in awarding fees in "constitutional claims." A reasonable observer might well conclude that this is not the inquiry a neutral factfinder (the Western District *en banc* acting under the Local Rules) would order under Rule 8.2. In short, even without Local Rule 83.6, this matter now requires recusal under § 455.

**III.** **The District Court is interfering with this Court's appellate jurisdiction by forcing public disclosure of attorney work product on the fee issue, re-litigating whether *the District Court* approves the fee arguments Petitioners now present to *this Court* on appeal.**

The District Court's Second Show Cause Order impermissibly requests the Petitioners to provide legal research and analysis that would allow the District Court to investigate and decide upon a matter that is on appeal. *See* [Appx. 49]. The Second Show Cause Order purports to compel Attorney Hermann to provide the basis for her statements relating to the District Court's attorney's fees decision, the very decision that is subject to a pending appeal before this Court, including:

- Identifying in detail any research, interviews, or findings, supporting her belief that her statements were true, including prior orders in other cases;
- Identifying any orders by the District Court awarding attorney's fees in favor of a party against whom a constitutional claim was filed, which Attorney Hermann considered prior to making her statements;
- Identifying any orders by the District Court awarding attorney's fees in favor of a party filing a constitutional claim, which Attorney Hermann considered;
- Identifying any case involving parents' constitutional rights considered by Attorney Hermann in making the statements, including any case in which the District Court awarded attorney fees against parents.

*Id*.

The District Court previously shifted attorney's fees under § 1988, ordering Petitioners to pay $312,869.50 to Defendants. *See* [Appx. 12].  That order is subject to an appeal pending before this Court. *See Henderson v. Springfield R-12 School District*, Case No. 23-1880 (8th Cir. Filed Apr. 27, 2023). The District Court's desire

29

to relitigate the attorney's fee issue by compelling the production of documents to see if Attorney Hermann truly believed the positions which she advocated before that court, and now before this Court, runs afoul of this Court's clear precedent divesting district courts of jurisdiction of issues on appeal.

"Once a notice of appeal is filed; the district court is divested of jurisdiction over matters on appeal." *Missouri v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1106 (8th Cir. 1999) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). The notice of appeal is an event of "jurisdictional significance" as it "confers jurisdiction to the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 59. Thus, a district court and an appellate court should not consider the same issues simultaneously. *See United States v. Queen*, 433 F.3d 1076, 1077 (8th Cir. 2006) ("[A] federal district court and a federal court of appeals should not assert jurisdiction over a case at the same time. . .").

Petitioners appealed the District Court's order awarding attorney's fees on April 7, 2023, effectively divesting the District Court of jurisdiction over such matters. *See* [Appx. 12]. On appeal, Petitioners argue that the District Court's award of attorney fees was erroneous. See *Henderson v. Springfield R-12 School District*, Case No. 23-1880, Appellant Brief p. 57-66 (8th Cir. Filed May 16, 2023). The District Court now demands public disclosure of attorney work product that

30

"substantiates" Attorney Hermann's previous statements criticizing the fee award—the same position she is litigating on appeal. Attorney Hermann's supporting research and legal analysis will assist the Eighth Circuit in deciding whether the District Court erred in awarding attorney fees. Therefore, the District Court's request for a supplementary response relating to legal research forming the basis for Attorney Hermann's statements would impermissibly allow the District Court and the Appellate Court to consider the same issue simultaneously.

## IV. Petitioners Lack Other Adequate Means to Attain the Relief Sought.

Petitioners asked the District Court for the same relief they seek here: to surrender its investigation to the Western District *en banc* or, in the alternative, to recuse. See Motion to Refer or Recuse, [Appx. 51-74]. The District Court declined. [Appx. 75-78].

If the District Court can continue investigating to "substantiate" its own finding of probable cause on its own disciplinary allegations, Attorney Hermann's due process rights will be irreversibly violated. Waiting for the District Court to see its efforts through and then directly appealing the outcome is not a meaningful substitute, as her and her clients' rights are violated by having to defend a lower court's investigation into the research and analysis underlying her arguments on appeal while she is the midst of litigating here.

31

Additionally, Petitioners and Attorney Hermann lack adequate means to prevent the divulgence of attorney work product in this case, as ordered by the District Court in the Second Show Cause Order. [Appx. 49]. If these disclosures are made publicly to the Court—and to opposing counsel, who continues to litigate against Petitioners before this Court in the merits appeal—Petitioners face compelled waiver of a fundamental privilege.

## CONCLUSION

For the reasons stated above, a writ must issue to safeguard Petitioners' and Attorney Hermann's clear legal rights, and the requested writ is appropriate under the circumstances. The District Court accusing her of wrongdoing cannot investigate to "substantiate" its allegations and establish probable cause, especially where its investigation demands public disclosure of attorney work product she developed to litigate the fee issue and appeal the matter in this Court. This Court should order the District Court to withdraw its show cause orders and cease its investigation of Petitioners' merits counsel.

32

Dated: June 7, 2023                    Respectfully submitted,

                                       **GRAVES GARRETT, LLC**

                                       */s/ Edward D. Greim*
                                       Edward D. Greim
                                       1100 Main Street, Suite 2700
                                       Kansas City, MO 64105
                                       Telephone: (816) 256-3181
                                       Fax: (816) 256-5958
                                       edgreim@gravesgarrett.com

                                       ***Counsel for Petitioners &***
                                       ***Ms. Kimberly Hermann, Esq.***

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 21(d)(1) because this brief contains 7,721 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Times New Roman 14 point font.

                                       */s/ Edward D. Greim*
                                       Attorney for Petitioners

## <u>CERTIFICATE OF SERVICE</u>

I certify that this Petition for Writ of Mandamus was filed with the Clerk of Court on June 7, 2023, via this Court's electronic filing system. I also certify that a copy of this Petition will be filed in the record in case number 6:21-cv-03219 providing notice to the parties and the District Court in the District Court case.

 */s/ Edward D. Greim*
Attorney for Petitioners

34

# APPENDIX

First Show Cause Order issued April 18, 2023 [Dkt. 115] ............................ APPX1

Plaintiffs' Response to First Show Cause Order
filed May 4, 2023 [Dkt. 126] ............................................................ APPX3

      Exhibit A to Plaintiffs' Response ............................................ APPX43

Second Show Cause Order issued May 24, 2023 [Dkt. 128] ...................... APPX45

      Exhibit 1 to Second Show Cause Order ................................... APPX50

Plaintiffs' Motion to Refer or Recuse with Suggestions in Support
filed June 2, 2023 [Dkt. 129] ............................................................ APPX51

Order Denying Motion to Refer or Recuse
issued June 6, 2023 [Dkt. 130] ......................................................... APPX75

Appellate Case: 23-2394    Page: 40    Date Filed: 06/07/2023 Entry ID: 5285178

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BROOKE HENDERSON, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 6:21-cv-03219-MDH |
| | ) | |
| SCHOOL DISTRICT OF | ) | |
| SPRINGFIELD R-12, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

On April 12, 2023, Attorney Kimberly Hermann, Plaintiffs' co-counsel, appeared on a Newsmax television segment highlighting this Court's rulings on summary judgment and attorney's fees. (Docs. 88, 107). Discussing the effect of this Court's rulings, Attorney Hermann stated, "this is closing the courthouse doors." Attorney Hermann also stated, "this will prevent every single person that has a potential First Amendment claim against the government…from ever being able to bring a lawsuit." Referring to Plaintiffs' appeal currently pending before the Eighth Circuit, the host of the media segment specifically inquired, "The Eighth Circuit…How can we help? How can we get ahold of these guys?"

On April 13, 2023, Attorney Herman appeared on a Fox News television segment. Referring to this Court's ruling on attorney's fees, Attorney Hermann stated, "the point of it is to chill speech." Attorney Hermann later stated, "the intent of it is to stop parents and teachers from ever bringing a lawsuit again." Links to these media segments were later publicly shared on Southeastern Legal Foundation's website with the headings, "brave educators are punished for suing to stop unconstitutional teacher training" and "SLF client Brooke Henderson discusses

APPX 1

'unprecedented' punishment for speaking up." Southeastern Legal Foundation's April 11, 2023 press release also states, "SLF General Counsel Kim Hermann explains, 'This is an effort by a lone agenda-driven federal judge to deny concerned teachers and parents the right to seek redress in court and to protect so-called 'anti-racist' training in Missouri's public schools.'"

Plaintiffs are **ORDERED** to show cause no later than April 20, 2023 as to how Attorney Hermann's statements fail to violate Georgia Rule of Professional Conduct 3.6 and Missouri Rules of Professional Conduct 4-3.6 and 4-8.2, made applicable through United States District Court for the Western District of Missouri Local Rules 83.5 and 83.6, and why sanctions should not be imposed for any such violation.

**IT IS SO ORDERED.**

Dated: April 18, 2023                                   _/s/ Douglas Harpool_
                                                        **DOUGLAS HARPOOL**
                                                        **United States District Judge**

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### SOUTHERN DIVISION

BROOKE HENDERSON and JENNIFER LUMLEY,    )
   )
   )
      Plaintiffs,    )
   )
v.    ) Case No. 6:21-cv-03219-MDH
   )
SCHOOL DISTRICT OF SPRINGFIELD R-12, BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF SPRINGFIELD R-12, GRENITA LATHAN, YVANIA GARCIA-PUSATERI, and LAWRENCE ANDERSON,    )
   )
   )
   )
   )
   )
   )
   )
      Defendants.    )

---

## PLAINTIFFS' RESPONSE TO SHOW CAUSE ORDER

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 3

    A.  The Court grants summary judgment to Defendants and orders Plaintiffs to pay Defendants' legal fees. ............................................................................................ 3

    B.  Attorney Hermann's statements regarding the decisions .................................... 4

    C.  The Court's Show Cause Order .............................................................................. 5

ARGUMENT .................................................................................................................. 5

    I.       Ms. Hermann's statements do not violate Rule 3.6 because there is no risk of materially prejudicing an adjudicative proceeding. ............................................ 5

    II.     Missouri Rule 4-8.2, as cabined by the First Amendment, does not prohibit Ms. Hermann's statements. .................................................................................. 9

          A.  Background Law ............................................................................................ 10

              1. Qualifications and integrity of a judge ............................................... 10

              2. Falsity ..................................................................................................... 10

              3. Opinions ................................................................................................ 11

              4. Objective or subjective standard for attorney's knowledge ............. 11

          B.  The Statements do not violate the plain text of Rule 4-8.2 ......................... 12

              1.  April 12th and 13th Statements ............................................................. 12

              2.  The April 11 Statement ........................................................................ 17

          C.  Alternatively, Rule 4-8.2 fails First Amendment scrutiny as a content and viewpoint-based restriction on core political speech ........ 20

III.    If sanctions or discipline are to be considered against Ms. Hermann, proper procedure must be followed. ................................................................23

    A.  The Western District's Local Rules prescribe the process for referring, investigating, and administering the discipline of attorneys who are alleged to have violated the Rules of Professional Conduct. ............................24

    B.  If the Court intends to exercise inherent authority to impose sanctions even after resolving the merits of the case, that authority is similarly limited. ........26

        1.  This Court lacks inherent authority to impose sanctions under either Rule 3.6 or 4-8.2 for conduct that post-dates adjudicative proceedings before the Court and can have no adverse effect on that proceeding. ..................................................26

        2.  The Court's inherent authority to award attorney's fees as a sanction requires a finding of bad faith, which is not present here. ........28

        3.  If the Court considers imposing a sanction other than assessing attorney's fees, that decision is nevertheless subject to procedural safeguards and due process considerations. ..................30

CONCLUSION ....................................................................................31

CERTIFICATE OF SERVICE ................................................................33

# TABLE OF AUTHORITIES

**Case**                                                                        **Pages**

*A.J.H. ex rel. M.J.H. v. M.A.H.S.*,
    364 S.W.3d 680 (Mo. App. W.D. 2012) ........................................ 29, 30

*Anderson v. Dunn*,
    6 Wheat. 204, 5 L.Ed. 242 (1821) ........................................ 27

*Berry v. Schmitt*,
    688 F.3d 290 (6th Cir. 2012) ........................................ 11

*Bridges v. California*,
    314 U.S. 252 (1941) ........................................ 22

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ........................................ *passim*

*Estes v. Texas*,
    381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) ........................................ 7

*Ex parte Robinson*,
    19 Wall. 505, 22 L.Ed. 205 (1874) ........................................ 27

*Fla. Bar v. Went for It*,
    515 U.S. 618 (1995) ........................................ 10

*Flowers v. Jefferson Hosp. Ass'n, Inc.*,
    1993 WL 771015 (E.D. Ark. Nov. 29, 1993) ........................................ 14

*Fuqua Homes, Inc. v. Beattie*,
    388 F.3d 618 (8th Cir. 2004) ........................................ 23

*Garrison v. State of Louisiana*,
    379 U.S. 64 (1964) ........................................ *passim*

*Gentile v. State Bar of Nevada*,
    501 U.S. 1030 ........................................ *passim*

*Goodyear Tire & Rubber Co. v. Haeger*,
    581 U.S. 101 (2017) ........................................ 29

*Graham v. Weber*,
    2015 WL 5797857 (D. S.D., Oct. 5, 2015) ........................................ 6

*Gundacker v. Unisys Corp.*,
    151 F.3d 842 (8th Cir. 1998) ................................................................. 27

*Hirschkop v. Snead*,
    594 F.2d 356 (4th Cir. 1979) .................................................................. 7

*In re Fletcher*,
    424 F.3d 783 (8th Cir.2005) ........................................................... 25, 26

*In re Sawyer*,
    360 U.S. 622 (1959) ............................................................................. 10

*In re Voorhees*,
    739 S.W.2d 178 (Mo. banc 1987) ........................................................ 31

*Irvin v. Dowd*,
    366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) ............................ 7

*Lamb Eng'g & Const. Co. v. Nebraska Pub. Power Dist.*,
    103 F.3d 1422 (8th Cir. 1997) ............................................................. 29

*Landmark Communications, Inc. v. Virginia*,
    435 U.S. 829 (1978) ............................................................................. 21

*Liddell v. Board of Educ.*,
    73 F.3d 819 (8th Cit. 1996) ........................................................ 2, 7, 28

*Link v. Wabash R. Co.*,
    370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) ......................... 27

*Matter of Westfall*,
    808 S.W.2d 829 (Mo. banc 1991) ................................................. *passim*

*Matter of Westfall*,
    808 S.W.3d 832 (Mo. banc 1991) ........................................................ 11

*Members of City Council v. Taxpayers for Vincent*,
    466 U.S. 789 (1984) ............................................................................. 21

*NAACP v. Button*,
    371 U.S. 415 (1963) ............................................................................... 1

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra (NIFLA)*,
    138 S. Ct. 2361 (2018) ................................................................... 10, 13

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 12, 20, 21

*Pennekamp v. Florida,*
    328 U.S. 331 (1946) ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 22

*Perkins v. Gen. Motors Corp.,*
    965 F.2d 597 (8th Cir. 1992) ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 27

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 20

*Republican Party v. White,*
    536 U.S. 765 (2002) ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 20

*Riverside v. Rivera,*
    477 U.S. 562 (1986) ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 14

*Roadway Express, Inc. v. Piper,*
    447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) ⸺⸺ 27, 28, 29

*Sheppard v. Maxwell,*
    384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) ⸺⸺⸺ 7

*Smith v. Pace,*
    313 S.W.3d 124 (Mo. banc 2010) ⸺⸺⸺⸺⸺⸺⸺⸺ 12, 23

*Standing Comm. v. Yagman,*
    55 F.3d 1430 (9th Cir. 1995) ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 11, 18

*State ex rel. Twiehaus v. Adolf,*
    706 S.W.2d 443 (Mo. banc 1986) ⸺⸺⸺⸺⸺⸺⸺⸺⸺ 30

*Steelman v. Rib Crib No. 18,*
    2012 WL 4026686 ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 14

*United States Dep't of Justice v. Mandanici,*
    152 F.3d 741 (8th Cir. 1998) ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 25

*United States v. Alvarez,*
    567 U.S. 709 (2012) ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 12, 20, 22

*United States v. Hudson,*
    7 Cranch 32, 3 L.Ed. 259 (1812) ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 27

*Willhite v. Collins*,
    459 F.3d 866 (8th Cir. 2006) ..................................................................23, 25

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
    471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) ....................................31


**STATUTES**

28 U.S.C. § 1927 ............................................................................................27, 29

42 U.S.C. § 1988 ..............................................................................................3, 13


**RULES**

Fed. R. Civ. P. 37 ...................................................................................................29

Ga. R. Prof. Cond. 3.6 ..........................................................................................2, 5

Mo. R. Prof. Cond. 4-3.6 .................................................................................*passim*

Mo. R. Prof. Cond. 4-8.2 .................................................................................*passim*

Mo. Sup. Ct. R. 8.15 ..................................................................................................3

Mn. Dist. Ct. R. 83.6 ................................................................................................25

W. Dist. Mo. L.R. 83.5 ...............................................................................................5

W. Dist. Mo. L.R. 83.6 ....................................................................................*passim*

# INTRODUCTION

The Court should not sanction Plaintiffs or initiate disciplinary proceedings against their merits counsel for statements they made between April 11 and 13th, 2023, criticizing this Court's decisions on the merits and awarding fees. During the preceding 18 months of litigation, through multiple hearings and substantial motion practice, SLF attorneys showed respect to this Court and made no statements criticizing its proceedings. Immediately upon receiving this Court's Show Cause Order, Ms. Kimberly Hermann and Southeastern Legal Foundation ("SLF") withdrew all of the statements the Order identified which appear on SLF's website or social media feeds. SLF also canceled and declined interviews. See Ex. A, Declaration of Kimberly Hermann at ¶¶2-3. Finally, after reflecting upon the Order, Ms. Hermann wrote an apology to the Court. *Id*. at ¶6.

It is significant that counsel's criticism of the legal reasoning in this Court's order and its likely impact on the development of civil rights law was made in good faith by a public interest law firm that focuses on the First Amendment rights of teachers, employees, parents, and students in public schools. Plaintiffs and SLF have a First Amendment right—and SLF has a legal duty— to express this criticism, both in briefing and in public statements explaining the briefing. Plaintiffs' and SLF's criticism of the Court's reasoning form the basis of their ongoing appeal in the Eighth Circuit. Such criticism is pure political speech protected by the First Amendment of the United States Constitution, even where professional ethics rules appear to be implicated. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1051 (1991) (recognizing that some parts of the bar have assumed "the professional mission to challenge the actions of the State," and attorney speech is protected by the First Amendment); *NAACP v. Button,* 371 U.S. 415, 429-30 (1963) (in holding that Virginia's ban on "solicitation" by NAACP attorneys violated First Amendment speech and association protections, explaining that in the context of NAACP's in-house legal

advocacy, "litigation is not a technique of resolving private differences. ... It is thus a form of political expression" and an avenue for "redress of grievances").

SLF's speech also comports with the Rules of Professional Conduct. As discussed below, the statements at issue comply with Missouri and Georgia Rules 3.6 and Missouri Rule 4-8.2. With respect to Rule 3.6, they were made with the certainty that a final judgment and ancillary fee award had been entered, and that the Court retained no jurisdiction to decide any matters on those points. *See Gentile*, 501 U.S. at 1076 (attorney extrajudicial speech could be regulated under the "substantially likely to materially prejudice an adjudicative proceeding" standard because it "merely postpones the attorneys' comments *until after trial*") (emphasis added); *see also Liddell v. Bd. of Educ.*, 73 F.3d 819, 822 (8th Cit. 1996) (citations omitted) (notice of appeal divests the district court of jurisdiction on matters at issue in appeal). The statements were not reasonably likely to impair an adjudicative proceeding because the case had been adjudicated without trial, the parties had agreed the facts were undisputed, and there was no jury to be influenced. To the extent Rule 4-8.2. affords a distinct basis for the affected court to issue sanctions where there is no pending adjudicative proceeding, the statements reflected Ms. Hermann's honest opinion—and Plaintiffs' litigating position in the Eighth Circuit—about the policy basis for this Court's decision.

Finally, the Court lacks inherent authority to impose its own sanctions because the statements occurred after all merits proceedings had terminated in the District Court, they do not violate any order, and are not part of a continuing course of conduct over which the court assumed supervision. Any violation of Rules 3.6 or 4-8.2. would have to be addressed under the procedures mandated by the District's Local Rules rather than through sanctions imposed by this Court.

Plaintiffs urge that this should be unnecessary. They and their counsel recognize that no court is above criticism, but every court deserves courtesy and respect. They will maintain the

respect due this Court and its honorable officers, conducting themselves with dignity even as they exercise their right and duty to criticize the Court's legal reasoning, both in other tribunals and in the public square. Mo. Sup. Ct. R. 8.15(b).

## FACTUAL BACKGROUND

**A. The Court grants summary judgment to Defendants and orders Plaintiffs to pay Defendants' legal fees.**

The Parties filed cross motions for summary judgment and on January 12, 2023, the Court granted Defendants' Motion and denied Plaintiffs' Motion, holding that Plaintiffs lacked standing to bring the claims alleged. [Doc. 88]. In that same order, the Court indicated its willingness to "entertain a separate motion for attorney's fees on behalf of Defendants" pursuant to 42 U.S.C. § 1988. [Doc. 88 at p. 25]. On February 10, 2023, Plaintiffs filed a notice of appeal to the United States Court of Appeals for the Eighth Circuit, appealing from the Court's grant of summary judgment in favor of Defendants. [Doc. 89]. Plaintiffs then filed a motion asking the Court to defer any ruling on attorney's fees until after the resolution of the appeal. [Doc. 90, filed February 14, 2023]. Defendants opposed that motion. [Doc. 94].

On February 17, 2023, Defendants filed a motion for attorney's fees [Doc. 97] and suggestions in support [Doc. 98] seeking $312,869.50. Four days later, the Court denied Plaintiffs' motion to defer ruling on the attorney's fees issue until the resolution of the appeal in the Eighth Circuit. [Doc. 99]. Plaintiffs opposed Defendants' motion for attorney's fees. [Doc. 103]. On March 31, 2023, the Court found Plaintiffs' claims to be frivolous and granted Defendants' motion for attorney's fees. [Doc. 107]. The Plaintiffs filed a notice of appeal on the issue of attorney's fees on April 7, 2023. [Doc. 110].

Plaintiffs' appeal from the Court's orders granting summary judgment in favor of Defendants and granting Defendants' motion for attorney's fees are currently pending before the United States Court of Appeals for the Eighth Circuit.

**B. Attorney Hermann's statements regarding the decisions**

After the Court's decisions in this case and the filing of the appeals therefrom, Attorney Hermann made three sets of statements regarding the Court's decisions which are at issue here.

The first statement comes from an April 11, 2023, press release issued by Southeastern Legal Foundation which quotes "SLF General Counsel Kim Hermann" as saying: "This is an effort by a lone agenda-driven federal judge to deny concerned teachers and parents the right to seek redress in court and to protect so-called 'anti-racist' training in Missouri's public schools." (the "April 11th Statement").

The second, made in an April 12, 2023, interview with Newsmax, said that the Court's decision "is closing the courthouse doors" and that "this will prevent every single person that has a potential First Amendment claim against the government…from ever being able to bring a lawsuit" (the "April 12th Statement"). The April 12th Statement drew a question from the Newsmax host suggesting amicus help for Plaintiffs' appeal currently pending before the Eighth Circuit; the host asked, "How can we help? How can we get ahold of these guys?"

The third statement, made in an April 13, 2023, interview with Fox News, said that the "point" of the Court's ruling on attorney's fees "is to chill speech" and that the "intent of [the decision] is to stop parents and teachers from ever bringing a lawsuit again" (the "April 13th Statement").

### C.  The Court's Show Cause Order

On April 18, 2023, the Court issued a Show Cause Order [Doc. 115] identifying Ms. Hermann's three statements above and ordering Plaintiffs:

> [T]o show cause no later than April 20, 2023 as to how Attorney Hermann's statements fail to violate Georgia Rule of Professional Conduct 3.6 and Missouri Rules of Professional Conduct 4-3.6 and 4-8.2, made applicable through United States District Court for the Western District of Missouri Local Rules 83.5 and 83.6, and why sanctions should not be imposed for any such violation.

*Id.* at 2. Plaintiffs filed a motion to extend the time to respond to the show cause order from two days to fourteen days [Docs. 116 (motion) and 117 (suggestions in support)] and indicating Plaintiffs' intent to explore retaining outside counsel to specifically address the issues raised in the Show Cause Order. The Court granted that motion. [Doc. 119] The undersigned counsel appears for the limited purpose of responding to the Show Cause Order.

## ARGUMENT

### I.  Ms. Hermann's statements do not violate Rule 3.6 because there is no risk of materially prejudicing an adjudicative proceeding.

The relevant proscriptions on attorney speech under Georgia Rule of Professional Conduct 3.6 and Missouri Supreme Court Rule 4-3.6 ("Rule 3.6") are identical:

> A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a person would reasonably believe to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

Ga. R. Prof. Resp. 3.6; Mo. Sup. Ct. R. 4-3.6. As each rule notes, Rule 3.6 is concerned with "Trial Publicity" that might make it difficult or impossible for a party to the proceeding to receive a fair and impartial trial.

While states have deemed it good policy to regulate certain statements by attorneys, those regulations are and must be narrowly construed in order to live in harmony with the First

Amendment. "At the very least, our cases recognize that disciplinary rules governing the legal profession cannot punish activity protected by the First Amendment, and that First Amendment protection survives even when the attorney violates a disciplinary rule he swore to obey when admitted to the practice of law." *Gentile*, 501 U.S. at 1054 (Kennedy, J., writing for four justices). Rule 3.6 requires careful and narrow construction to comply with the First Amendment. *Gentile*, 501 U.S. at 1075-1076 (requiring Rule 3.6 to be "narrowly tailored" to a "substantial state interest."). Comment 1 to Rule 3.6 acknowledges the tension between the rule and the inherent constitutional and societal value of free and full discussion of legal proceedings:

> It is difficult to strike a balance between protecting the right to a fair trial and safeguarding the right of free expression. Preserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial, particularly where trial by jury is involved. If there were no such limits, the result would be the practical nullification of the protective effect of the rules of forensic decorum and the exclusionary rules of evidence. On the other hand, there are vital social interests served by the free dissemination of information about events having legal consequences and about legal proceedings themselves. The public has a right to know about threats to its safety and measures aimed at assuring its security. It also has a legitimate interest in the conduct of judicial proceedings, particularly in matters of general public concern. Furthermore, the subject matter of legal proceedings is often of direct significance in debate and deliberation over questions of public policy.

The most relevant factor in determining whether a particular statement violates Rule 3.6 is the nature of the proceeding involved, with the sensitivity of criminal trials naturally justifying greater restrictions on speech:

> Criminal jury trials will be most sensitive to extrajudicial speech. Civil trials may be less sensitive. Non-jury hearings and arbitration proceedings may be even less affected. The rule will still place limitations on prejudicial comments in these cases, but the likelihood of prejudice may be different depending on the type of proceeding.

Cmt. 6 to Rule 3.6. *See, e.g., Graham v. Weber*, 2015 WL 5797857 at *9 (D. S.D., Oct. 5, 2015) (in habeas action in which state attorney general had commented in public speeches about the

convicted prisoner's kidnapping, rape and murder, finding that because there was no jury trial, the "likelihood that extrajudicial statements of this nature may assail Graham's fair trial rights in the present proceedings is so attenuated as to be beyond remote").

Here, at the time she made the statements at issue, the merits had been resolved, Notices of Appeal had been filed, this Court was divested of jurisdiction, and it could not possibly have acted further on the merits or the issue of attorneys' fees. *Liddell*, 73 F.3d at 822. Ms. Hermann neither knew nor "reasonably should" have known that the statements would "have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." Additionally, this was a civil case. No party to this case made a demand for a jury trial. [Doc. 1-1, p. 2]. No party claimed any dispute as to the material facts or resisted summary judgment on those grounds; all factual and legal issues in this case were to be (and were) resolved by the Court.

There was and never could have been any risk that Ms. Hermann's statements might cause the "material prejudice" with which the rule is concerned—prejudice which causes actual or potential jurors (or even the judge as factfinder) to develop biases and predispositions that might affect the outcome. *See Hirschkop v. Snead*, 594 F.2d 356, 371 (4th Cir. 1979). The *Hirschkop* court explained:

> But when it becomes apparent that the case is to be tried by a judge alone, we see no compelling reason for restricting lawyers' comments in order to assure a fair trial. Pretrial publicity has not been shown to be a source of interference to fair bench trials. Cases which have been reversed because of such publicity have invariably been tried by juries. See, e. g., *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

*Id*.

Additionally, when evaluating whether an attorney's statements regarding a legal proceeding may cause prejudice, "the timing of the statement is crucial." *Gentile*, 501 U.S. at 1044

(citations omitted). The Supreme Court acknowledged in *Gentile* that a statement made on the eve of *voir dire* in a jury trial risks a much higher chance of prejudice than a statement made six months prior. *Id.* That is why the statements at issue in *Gentile* did not violate the rule. The inverse is also true. Statements made *after* the issues in a case are resolved—like those made by Ms. Hermann in mid-April—run no risk of prejudicing the outcome of the adjudicative proceeding because the Court has already rendered its decision. [Doc. 88] (granting summary judgment in favor of Defendants on January 12, 2023); [Doc. 107] (granting Defendants' motion for attorney's fees on March 31, 2023). This was critical to the Court's ruling in *Gentile*. 501 U.S. at 1076 (speech could be regulated because it "merely postpones the attorneys' comments *until after trial*") (emphasis added). Even if Plaintiffs' appeal succeeds, the parties could, at most, find themselves back before the Court for a bench trial, and it would be many more months away than the six months the Court found in *Gentile* could not affect the proceedings. Any risk of prejudice would be sufficiently attenuated by the passage of time.

A sanction for comments made after the trial court's resolution of a case under Rule 3.6 fails to comport with the First Amendment. The Supreme Court narrowly upheld the pretrial publicity rule as facially constitutional in *Gentile*. 501 U.S. at 1075-1076 (C.J. Rehnquist opinion for three justices, a portion of which Justice O'Connor joined in a separate opinion). While Plaintiffs agree a fair trial is a legitimate state interest, "[o]nly the occasional case presents a danger of prejudice from pretrial publicity," and the burden on speech must be "no greater than is necessary or essential." *Id*. at 1054 (Kennedy, J., writing for four justices). Even Chief Justice Rehnquist, whose dissenting opinion would have imposed discipline, recognized that Rule 3.6 would "rarely" allow for discipline for pre-bench trial speech. *Id*. at 1077. Timing is critical too: when writing for the Court, the Chief Justice found that the Rule survived narrow tailoring and

was not unduly burdensome because, in part, it "merely postpones the attorneys' comments until after the trial." *Id*. at 1076. Applying Rule 3.6 *after* a case is resolved would be far more burdensome, particularly given the absence of any risk of prejudice. In short, under the plain text of Rule 3.6 and under the First Amendment as applied in *Gentile*, no sanctions can be imposed under Rule 3.6.

## II.  Missouri Rule 4-8.2, as cabined by the First Amendment, does not prohibit Ms. Hermann's statements.

As the Court's Order recognizes, Missouri, but not Georgia, has adopted the Model Rule relating to statements about judicial officials. Missouri Rule 4-8.2 states:

> A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge…

For the reasons discussed below, the Statements do not violate Rule 4-8.2. They are not "concerning the qualifications or integrity" of the Court, but instead are opinions of counsel criticizing the policy considerations the Court cited as independent reasons for finding Plaintiffs' claim frivolous and awarding fees. Plaintiffs and SLF are concerned that if the reasons cited by the Court for awarding fees are sustained on appeal or adopted in other courts, they will seriously chill speech—and may chill Section 1983 claims—not just in cases like this, but in any claim dealing with emerging civil rights applications. The Court openly and honestly disagrees with Plaintiffs' position for the reasons it expressed in its decisions. Parties' and attorneys' own open and honest acknowledgment of a policy disagreement is not grounds for a Rule 4-8.2 violation. If this does, however, implicate the Rule, then as Plaintiffs argue in the alternative below, Rule 4-8.2 violates the First Amendment. Again, however, this Court should not have to reach that argument, and should instead decline to impose sanctions or initiate disciplinary proceedings under the Rule.

APPX 18

Case 6:21-cv-03219-MDH   Document 126   Filed 05/04/23   Page 16 of 40
Appellate Case: 23-2394   Page: 58   Date Filed: 06/07/2023 Entry ID: 5285478

### A.    Background Law

Assuming that Rule 4-8.2 is facially compliant with the First Amendment, careful enforcement of each of its core elements—subject matter, falsity, lack of opinion, and attorney mental state—is essential to protect the rights of attorneys to engage in free speech and zealous advocacy. Attorneys continue to enjoy protection under the First Amendment when they speak. *Fla. Bar v. Went for It*, 515 U.S. 618, 634 (1995) ("There are circumstances in which we will accord speech by attorneys on public issues and matters of legal representation the strongest protection our Constitution has to offer."). Nor does speech merit any less protection because the speaker is regulated as part of a professional licensing regime. *See Nat'l Inst. of Fam. & Life Advocs. v. Becerra (NIFLA)*, 138 S. Ct. 2361, 2371–72 (2018) ("Speech is not unprotected merely because it is uttered by 'professionals.'").

#### 1.    Qualifications and integrity of a judge

By its express terms, Rule 4-8.2 only purports to proscribe statements "concerning the qualifications or integrity of a judge." Rule 4-8.2 does not prohibit attorney speech (whether true or false) criticizing the reasoning or result of a judge's decision, or its practical and legal implication. Nor could it. *See In re Sawyer*, 360 U.S. 622, 635 (1959) ("Petitioner did not say Judge Wiig was corrupt or venal or stupid or incompetent. The public attribution of honest error to the judiciary is no cause for professional discipline in this country.").

#### 2.    Falsity

Rule 4-8.2 explicitly requires that a statement be false (and then, knowingly false or made with reckless disregard as to truth or falsity), and this falsity requirement—as are each of Rule 4-8.2's other elements—is necessary for the rule to comport with the First Amendment. The burden

of establishing falsity falls upon the disciplining body. *Standing Comm. v. Yagman*, 55 F.3d 1430, 1438 (9th Cir. 1995) (internal citation omitted).

### 3. Opinions

For the same reason that Rule 4-8.2 requires falsity, it also does not (and cannot) punish statements of opinion or rhetorical hyperbole about a judge. An attorney's "statements impugning the integrity of a judge may not be punished unless they are capable of being proved true or false; statements of opinion are protected by the First Amendment unless they imply a false assertion of fact." *Yagman*, 55 F.3d at 1438 (internal citation omitted). Even statements that might appear factual in nature "at first blush" cannot be sanctioned if they are "rhetorical hyperbole" or "use language in a loose, figurative sense." *Yagman*, 55 F.3d at 1438 ("traitor" or "blackmail" seem to connote corruption, but were construed as mere rhetoric rather than statements of fact).

*Yagman* also declined to sanction a statement that the judge "has a penchant for sanctioning Jewish lawyers: me, David Kenner and Hugh Manes. I find this to be evidence of anti-[S]emitism," because the charge of anti-Semitism was clearly an opinion based on disclosed facts regarding the judge's sanctioning of Jewish lawyers. *Id.*; *see also Berry v. Schmitt*, 688 F.3d 290, 304 (6th Cir. 2012) (charge that "deck was stacked" based on questionable procedural decisions was non-actionable opinion).[1] Such protected comments were far more critical than Ms. Hermann's statements, as will be explained below.

### 4. Objective or subjective standard for attorney's knowledge

Even if an attorney is found to have made a statement of fact (and not mere opinion) about a judge's qualifications and integrity, Rule 4-8.2 poses one final question: whether the attorney

---

[1] In *Matter of Westfall*, a Missouri Supreme Court majority (over a vigorous dissent by Chief Justice Blackmar) declined to find an opinion where, without being able to point to any evidence—including any prior opinions or any language in the subject opinion—a prosecutor stated that an appellate judge was "a little bit less than honest" because he arrived at a decision "he personally likes." *Id.*, 808 S.W.3d 829, 832 (Mo. banc 1991).

"knows" it to be false or made it "with reckless disregard as to its truth or falsity." Rule 4-8.2. This language—the "actual malice" standard familiar from defamation cases—comes directly from *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), which held that public officials can recover damages for criticism of official conduct only upon making this showing. The *Sullivan* holding was extended to criminal remedies for attorneys' criticism of judges the following term in *Garrison v. State of Louisiana,* 379 U.S. 64, 74 (1964) (criminal defamation statute under which district attorney was convicted for "impugning [the] motives" of New Orleans judges in out-of-court statements was unconstitutional). Thus, the First and Fourteenth Amendments should protect attorneys from the imposition of civil, criminal, or professional liability unless the statement is made "with knowledge of its falsity or in reckless disregard of whether it was false or true." *Id*.

At one point three decades ago, the Missouri Supreme Court disagreed, and instead imposed a weaker, so-called "objective standard," in which an attorney who lacked subjective knowledge of falsity (or recklessness with regard to it) might still be found liable if the disciplinary authority could prove that an objectively reasonable attorney would have known the statement was false. *Matter of Westfall*, 808 S.W.2d at 833. But the Missouri Supreme Court later called *Westfall* into question because it was "decided shortly before *Gentile*." *Smith v. Pace*, 313 S.W.3d 124, 134 (Mo. banc 2010). The Court has subsequently recognized that, considering *Gentile*, "[t]he scrutiny of a state's interest in regulating lawyer speech *may be significantly higher today* than when this Court decided *Westfall*." *Smith*, 313 S.W.3d at 134 (emphasis added).

This is even more correct now than when written by the Missouri Supreme Court in 2010. In 2012, the United States Supreme Court held in a plurality that false statements are only unprotected when they involve "defamation, fraud, or some other legally cognizable harm," *United States v. Alvarez*, 567 U.S. 709, 718-9 (2012), and *Westfall* rejected this standard (the *Sullivan*

standard) for defamation. *See also Garrison,* 379 U.S. at 74 (applying the *Sullivan* standard to attorney speech that allegedly insulted judges). And as of 2018, the Supreme Court categorically rejected the idea of a "professional speech" doctrine, the rationale *Westfall* had cited for creating its own gloss on Rule 4-8.2's seemingly subjective test to instead impose an objective test. *See NIFLA*, 138 S. Ct. at 2371–72. In short, federal courts should no longer follow *Westfall*'s re-interpretation of Rule 4-8.2, and instead should follow the Rule's plain text as the interpretation that most closely complies with the First Amendment.

**B.      The Statements do not violate the plain text of Rule 4-8.2.**

**1.   April 12th and 13th Statements**

Ms. Hermann's April 12th and April 13th Statements describe the outcome of a judicial proceeding or the practical and legal implications of that outcome. The April 12th Statement as identified in the Show Cause Order includes Ms. Hermann's opinions that the effect of assessing large attorneys' fee awards under Section 1988 is that individuals will be deterred from pursuing 1983 claims, effectively "closing the courthouse doors" to those plaintiffs who are chilled by the prospect of a six-figure loss if they try to vindicate a constitutional right. The statement does not specifically reference the Court or its honorable judge, nor does it take any position regarding his qualifications or integrity.

The April 13th Statement was of a similar nature, indicating that the Court's decision will deter future similar lawsuits and that this was the "point" and "intent" of the fee decision. These were fair opinions for a public interest law firm to express based on the plain text of the Court's order and the law of fee awards under 42 U.S.C. §1988.

Assessing attorney's fees against a Section 1983 plaintiff is an extremely rare remedy that, as a matter of law, is intended to deter the filing of similar litigation based on the awarding court's

view that that such suits are "frivolous" and should be discouraged. *See Steelman v. Rib Crib No. 18,* 2012 WL 4026686, at *5 (W.D. Mo. 2012*); Flowers v. Jefferson Hosp. Ass'n, Inc.*, 1993 WL 771015, at *2 (E.D. Ark. Nov. 29, 1993) ("This Court is mindful of the impact of awarding attorneys' fees to defendants in civil rights cases and of the chilling effect such awards might have upon the filing of even meritorious claims. The standard for such a claim is properly very high."). Indeed, the whole point of awarding attorney fees to prevailing plaintiffs is to incentivize the bringing of cases that ordinarily would not be brought. *Riverside v. Rivera*, 477 U.S. 562, 577 (1986) (civil rights cases "frequently involve substantial expenditures of time and effort but produce only small monetary recoveries"). Plaintiffs pointed out that if any fees were to be assessed, a 90% downward adjustment as had been done in cases which, unlike the present case, involved vexatious litigants and yet would deter such frivolous litigation without chilling future meritorious 1983 litigation. [Doc. 103 at 15]. This Court did not do so, further bolstering the notion that the Court intended similar cases never being brought. Thus, it is no stretch to say that a chilling effect is precisely what is intended by the fee award. To the awarding court, the chilling effect is a feature and not a bug; to the losing civil rights plaintiff, it is a potentially far-reaching and disastrous decision that should be resolved on appeal.

Here, the Court explained the reasons for its conclusion that the Plaintiffs' claim was "frivolous." [Doc. 107, pp. 2-3]. A reasonable attorney would conclude that, in fact, the Court did intend to deter (that is, to chill) the filing of future cases similar to the Plaintiffs'. *Id*. Further, a reasonable attorney would read the Court's decisions to determine what, in its view, made them frivolous. Here, the Court made clear that its finding of frivolousness was not based solely on its view that the coercion Plaintiffs experienced in the training sessions failed to constitute an "injury-in-fact" under existing case law. *Id*. at 2-3. After stating its lack of injury-in-fact opinion, the Court

Case 6:21-cv-03219-MDH   Document 126   Filed 05/04/23   Page 21 of 40
Appellate Case: 23-2394   Page: 63   Date Filed: 06/07/2023 Entry ID: 5285478 APPX 23

proceeded to discuss *other* supporting bases for its frivolousness finding. Plaintiffs' counsel can fairly argue that these supporting bases for assessing attorney's fees are essentially policy arguments by the Court—its own view or "agenda" about what is fair, and about what the law should be. Plaintiffs' counsel does not impugn the Court's integrity by disagreeing that these views should have driven any part of the Court's decisions on the merits, frivolousness or fees.

In Plaintiffs' view, the first of the Court's alternative rationales was a policy argument. The Court characterized Plaintiffs' claim as follows: "Plaintiffs contend they should not have to listen to, learn, or follow Defendants' description of equity and anti-racism discussed during the training because they personally disagree." [Doc. 88, p. 23]. It continued:

> The claim that the district should not conduct training for them to attend on policies applicable at work involving their employment because they disagree with them, however, is untenable. Such a ruling would make administration of a governmental unit such as a large, urban school district wholly unworkable. It would distort the employer-employee relationship. It is a frivolous claim and theory.

*Id*. at 24. That is, this Court thought that Plaintiffs' theory was "frivolous" and should be deterred because of the effect it would have on the administration of local government.

In subsequently taking up the Court's invitation to file a separate fee motion, the Defendants cited this language back to the Court, arguing for a finding of frivolousness because Plaintiffs' filing of a lawsuit "served as a detriment towards the very important policies the District put forth in the interests of its students. The training strove to address, increase, and enhance employees' understanding and sensitivity to race issues likely to be confronted by minority students." [Doc. 98, p. 16]. The Court responded to this argument in its fee decision by returning to the reasoning and rationale from its summary judgment decision that Defendants had quoted, opining that Plaintiffs' lawsuit was frivolous because it amounted to an effort to "simply disregard

a training that is lawful," and that sustaining such claims "would make the management of a large, urban school district untenable." [Doc. 107 at 3].[2]

Relatedly, the Court characterized Plaintiffs' allegations of injury arising from the Defendants' anti-racism training as a purely "political dispute" and "frivolous political disagreement" that harmed students because, merely by having been asserted in federal court, it triggered defense costs that redirected funding from student education. Specifically, the Court opined:

> Finally, the political undertones of Plaintiffs' allegations, when considered alongside the lack of a factual basis for their claims, demonstrate how Plaintiffs' lawsuit has trivialized the important work of the federal judiciary. Plaintiffs attempted to drag Defendants into a political dispute rather than seek remedy for a genuine harm. This Court is a forum for litigation of genuine disputes of fact and law alone, rather that frivolous political disagreement. Defendants have invested significant time and tax dollars into defending this lawsuit. These resources would have been better spent ensuring educational opportunities for students.

[Doc. 107 at 3]. This, too, echoed an argument the Court had earlier made in its summary judgment opinion:

> Taxpayer dollars which could have been devoted to enhancing the educational opportunity of the students served by the district have instead been diverted to the defense of this lawsuit. The students of the district deserve better. So too do the taxpayers whose hard-earned money is taxed by the district for the purpose of educating the children of the district in which they reside.

[Doc. 88 at 25].[3]

---

[2] An early kernel of the Court's later opinion on summary judgment appears in the transcript of the initial scheduling conference, held November 16, 2021, in the courtroom. There, the Court asked Plaintiffs' counsel, "…[D]oesn't a school district in fact have an affirmative duty to see that racial justice occurs within its school district?" [Doc. 32 at 9]. After Plaintiffs' counsel began to explain the application of the "governmental speech doctrine," the Court pressed counsel for a case "in the school district context." As counsel began to answer that there was a "great deal of litigation," the Court interrupted to state, "Right. A bunch of the people who don't like the modern trend of race relations are now filing a bunch of lawsuits." Doc. 32 at 9-10. Here, the Court espoused the policy position it later cited to support its frivolousness opinion: that school boards should have the authority to manage their districts to support "racial justice," [Doc. 32 at 9], and that teachers or their lawyers should not be able to impede that goal by filing lawsuits that, in the Court's view, espouse the plaintiffs' "political" views instead of stating First Amendment claims.
[3] Long before granting the Defendants' summary judgment motion, at the initial status conference, the Court had expressed the following opinion: "I guess my struggle with Paragraphs 4 and 5 is they seem to me to be political

Regardless of whether one applies the *Westfall* "objective" standard, or the subjective standard under the plain text of Rule 4-8.2 and the First Amendment as interpreted by cases like *Garrison*, the Plaintiffs—and other future potential clients of the Southeastern Legal Foundation or other public interest law firms—are entitled to take the Court at its word. If the Court is indeed correct that workers and educators who oppose similar trainings are not genuinely injured and are instead merely litigating their own political views (that is, those opposed to the "modern trend of race relations," [Doc. 32 at 9-10], and that such litigation is sanctionable because, in part, it impedes school boards' duty to implement "racial justice," then teachers who are like the Plaintiffs—or whose factual situations are even close to Plaintiffs'—should not and will not risk severe sanctions by filing further Section 1983 civil rights litigation. The very point of the fee shifting provision under Section 1988 is to incentivize plaintiffs' attorneys to bring such claims. Rule 4-8.2(a) and the First Amendment permits public interest attorneys to make known to the public, to other lawyers, and to policymakers this potentially troubling and newsworthy development in a new area of the law.

## 2. The April 11th Statement

The April 11th Statement includes two opinions regarding the Court's fee award.[4] The first is that the Court was "agenda driven;" the second is that the Court's intent was to deny "teachers and parents" a cause of action relating to "anti-racist" training like that administered by Defendants

___

statements and not allegations relevant to a complaint. Why are they in there?" Plaintiffs' counsel responded, "We think it's important to understand the relevant backdrop here. I think the Court's point is actually well taken but -- goes straight to the heart of the case, which is that the teachers object to being forced to adopt a political position with which they disagree and so framing we thought was necessary to outline what those respective political positions are." [Doc. 32 at 7]. The following day, on its own motion, the Court struck those paragraphs from the introduction, opining that "Plaintiffs appear to use these paragraphs only to imply that SPS' views on racism, racial discrimination, and related issues are incorrect and that Plaintiffs' own differing views are correct. Such statements are purely political advocacy and are therefore clearly immaterial and impertinent as required under Rule 12(f)." [Doc. 30 at 2].

[4] Again, the Statement was, "This is an effort by a lone agenda-driven federal judge to deny concerned teachers and parents the right to seek redress in court and to protect so-called 'anti-racist' training in Missouri's public schools."

here. Ms. Hermann has withdrawn the statement and apologized to the Court for the language used. See Ex. A at ¶¶2-3, 6. However, under Rule 4-8.2 and the First Amendment, the April 11th Statement does not warrant sanctions.

The second opinion expressed on April 11th is nearly identical to the April 12 and 13 statements: that, in the opinion of a civil rights attorney used to bringing similar lawsuits, the Court did indeed intend to foreclose Section 1983 claims like Plaintiffs' against "anti-racist" trainings in public schools. As shown above, a reasonable attorney could form that opinion based on the Court's statements that it would find Plaintiffs' claim and theory "frivolous" even if they were able to show injury-in-fact, and that the money spent defending that case would have been better devoted elsewhere. [Doc. 88 at 23]. That the Court has come to hold this view does not speak to its qualifications or integrity.[5]

The first opinion, that the Court was "agenda driven," does not violate Rule 4-8.2 as cabined by the First Amendment. See Section III(A)-(B). The Court's two opinions on frivolousness (on summary judgment and on fees) both clearly state that the Court based its decision not merely on what it characterized as the lack of injury-in-fact, but also on its concerns that: (1) Plaintiffs' claims were really their own political dispute with anti-racism or the "modern trend of race relations"; (2) Plaintiffs' theory, if sustained, would make a large school district ungovernable, and such school districts have a duty to enforce racial justice; and (3) the mere filing of Plaintiffs' lawsuit had injured students by redirecting school district resources from education to legal defense. Each of these considerations, which could apply to a swath of other claims

---

[5] It is useful to compare this language to that of *Yagman*, where precise, descriptive words like "traitor" or "blackmail" were still not construed as statements of "fact" about a court's integrity, as opposed to mere rhetoric. *Yagman*, 55 F.3d at 1438.

involving similar mandatory trainings, are fairly characterized as a policy position or "agenda" of the Court.

Importantly, Ms. Hermann provided no opinion as to whether any of the Court's points were improper (as opposed to merely legally erroneous) grounds for a judicial decision on frivolousness, nor did she suggest they were somehow undisclosed or "dishonest." Indeed, the Court openly and clearly provided its views. For that reason, she did not suggest that the Court's consideration of these additional factors implicated either its qualifications or integrity. *Compare Westfall*, 808 S.W.2d at 838 (imposing discipline because counsel "accused Judge Karohl of deliberate dishonesty," and of "purposefully ignoring the law to achieve his personal ends").

Further, Ms. Hermann relied—and in appellate briefing, will rely—on the Court's own express statements within the text of its two decisions regarding the factors it considered in finding frivolousness. Because of her analysis of and reliance on the Court's own words, both in the very decisions she was discussing and in the Court's earlier statements on the record, Ms. Hermann's statement cannot have been knowingly or recklessly false, whether under the subjective standard of *Sullivan*, *Garrison*, and the plain text of Rule 4-8.2, or under the "objective" standard of what investigation a reasonable lawyer would take before making a statement. *Compare Westfall*, 808 S.W.2d at 838 (counsel failed to investigate and could not cite any opinion or other evidence showing the judge's allegedly "unspoken motive").

Counsel simply disagrees in good faith with the Court's *spoken* basis for finding Plaintiffs' claim frivolous and intends to argue in the appropriate forum that the factors the Court honestly and openly applied should not have been considered. Those statements, and her April 11th Statement, cannot implicate Rule 4-8.2, but nonetheless, Ms. Hermann has withdrawn them and has apologized. Ex. A at ¶¶2-3, 6.

**C.**     **Alternatively, Rule 4-8.2 fails First Amendment scrutiny as a content and viewpoint-based restriction on core political speech.**

This Court need not consider the constitutionality of Rule 4-8.2 if it finds that it can avoid the issue by narrowly applying its plain text under subsections II.A and B, *supra*. However, to the extent it would be inclined to take action against the Plaintiffs or their counsel notwithstanding those principles, then Plaintiffs suggest that the Rule itself is constitutionally infirm, both facially and as applied. Rule 4-8.2 would be governed by conventional First Amendment analysis that demands strict scrutiny, not *Westfall* or its laxer test. *See Republican Party v. White*, 536 U.S. 765, 774-75 (2002) (ethical restrictions placed on candidates for judiciary subject to strict scrutiny). In *Westfall*, the Missouri Supreme Court did not apply strict scrutiny to a speech restriction that was, as explained below, both content and viewpoint-based, without explaining why it was departing from the usual rule. 808 S.W.2d at 836. It found that Rule 4-8.2 served the interest of maintaining public confidence in the integrity of the judiciary without balancing either the effect on speech or analyzing whether the measure was appropriately tailored. *Id*. *Westfall* rejected the *New York Times v. Sullivan* standard for defamation under Rule 4-8.2 choosing instead the more deferential objective standard. *Id*. at 837.

Rule 4-8.2 is content-based. It applies "because of the topic discussed,"—the integrity of the judiciary—and thereby requires strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *see also Alvarez*, 567 U.S. at 724 (false speech that is not defamatory is not unprotected, and any restriction is content-based demanding strict scrutiny). Rule 4-8.2 is also viewpoint-based because its comments suggest[6] that it only applies to *critical* statements regarding a judicial

---

[6] The text of Rule 4-8.2(a) appears to apply to all comments "concerning" a judge's "qualifications or integrity." Yet Comment 1 expresses concerns with "false" statements only because they can "unfairly undermine public confidence in the administration of justice." This suggests that the rule is not concerned with false statements praising a judge's qualifications or integrity. Comment 3, too, seems concerned only with criticism of judges, stating that "lawyers are

official, but not those *lauding* the integrity of that same official, even when that statement is verifiably false. *See Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984) ("[T]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others.") (collecting cases). As both a content and viewpoint-based restriction on core political speech, Rule 4-8.2 is unlike the trial publicity rule, *see Gentile*, 501 U.S. at 1076 (trial publicity rule is "neutral as to points of view"), and must therefore be reviewed under strict scrutiny.

Sanctioning Ms. Hermann's comments will not pass strict scrutiny, either facially or as-applied. There is no compelling interest. The Supreme Court has never recognized an interest in suppressing expression in the name of protecting the public's confidence in a branch of government. On the contrary, criticism of public officials lies at the heart of public discourse. *Sullivan*, 376 U.S. at 270 ("[D]ebate on public issues should be uninhibited, robust, and wide-open, and that may well include vehement, caustic, and sometimes, unpleasant sharp attacks on government and public officials."). Judges are no different. *See Garrison*, 379 U.S. at 76 (attack "upon the personal integrity of judges" governed by *Sullivan* standard). In *Westfall*—now called into question by the Missouri Supreme Court—the interest in protecting the public's confidence is the judiciary was found to be "important," 808 S.W.2d at 836, but the Supreme Court determined that interest to be insufficient to warrant the suppression of speech. *See Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 841-42 (1978) (rejecting institutional respect of the courts or reputation of judges: "speech cannot be punished when the purpose is simply to protect the court as a mystical entity or the judges as individuals or as anointed priests set apart from the community and spared

---

encouraged to continue traditional efforts to defend judges and courts unjustly criticized." Plaintiffs in no way take issue with these duties, but cite them here to emphasize that Rule 4-8.2 is applied based on viewpoint, to criticism rather than praise of judicial or legal officials.

the criticism to which in a democracy other public servants are exposed."); *Bridges v. California*, 314 U.S. 252, 271 (1941) ("An enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect); *Pennekamp v. Florida*, 328 U.S. 331, 336-40 (1946) (rejecting "threat to the impartial and orderly administration of justice" as justification for contempt order stemming from political cartoon).

Nor does *Westfall's* approach satisfy the tailoring demanded under strict scrutiny, *see Alvarez*, 567 U.S. at 725-26, or even the narrow tailoring approach used in *Gentile*. *Westfall* did not assess the burden on speech or account for the fact that the lawyer would *never* be able to make critical comments at a later time, unlike *Gentile*. But under *Alvarez*, the Rule could only restrict speech if it is "actually necessary" to achieve its interest, which it is not. 567 U.S. at 726. That would require actual evidence of a "causal link" showing that the public's perceptions of judges are "diluted by false claims." *Id*. Moreover, just as in *Alvarez*, suppressing speech is "not actually necessary" because Ms. Hermann's speech can be countered with other speech to overcome even a true lie, not just mere rhetorical hyperbole. *Id*. at 726-27.

Even if reviewed under Justice Rehnquist's more forgiving *Gentile* standard,[7] the Rule cannot constitutionally be applied here. In *Gentile*, the Supreme Court upheld the trial publicity rule only because it was 1) "unrelated to the suppression of expression" 2) the restriction was narrowly tailored to advance the undeniably important interest in protecting a fair trial and 3) still allowed the attorney to make the comments, both before and after the trial. None of this was considered in *Westfall,* which is undoubtedly why the Missouri Supreme Court was correct in its later observation that the Rule should be subject to "*significantly higher*" scrutiny than was

---

[7] Four justices, led by Justice Kennedy, indicated that no basis existed to subject the trial publicity rule to anything less than strict scrutiny, even prior to *Alvarez* or *NIFLA*.

afforded in *Westfall*. *Smith*, 313 S.W.3d at 134 (emphasis added). The Rule is related to the suppression of expression. It is far more restrictive. It purports to apply even after trial and regardless of whether the attorney is even in a proceeding before a court. A wholesale restriction on critical political speech does not meet the narrowly tailored standard expressed in *Gentile*.

To be clear, Rule 4-8.2 does not encompass Ms. Hermann's comments. But if it does, it cannot be enforced against her without violating the First Amendment.

### III.    If sanctions or discipline are to be considered against Ms. Hermann, proper procedure must be followed.

The United States District Court for the Western District of Missouri has promulgated Local Rules to govern the investigation and sanctioning of professional misconduct. While all courts retain inherent authority to sanction attorney misconduct as an exercise of control over their own proceedings and orders, that inherent authority does not supplant the disciplinary matters covered under the Local Rules. *Willhite v. Collins*, 459 F.3d 866, 871 (8th Cir. 2006).

Adhering to the due process requirement that the court first identify the provision under which an attorney is proposed to be sanctioned or disciplined, the Court cited the Rules of Professional Conduct, which are applicable here through the Local Rules as the Western District's own disciplinary rules. *See Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 623 (8th Cir. 2004) (If sanctions are to be imposed, the court must identify the authority relied on in making its determination, because while rules may overlap to some extent when defining sanctionable conduct, they may also "sanction different kinds of actions, require the application of disparate standards of proof, permit the sanctioning of different persons, and differ in the procedures that the sanctioning court must follow."). If those Rules are to apply, as discussed below, the Western District and not this Court are the appropriate authority to assess counsel's conduct. In the alternative, if the Court now intends to rely exclusively on its own inherent authority, Plaintiffs

show below that the Court no longer possesses that sanctioning authority under the circumstances of this case. Either way, this Court should decline to initiate discipline or impose sanctions.

**A. The Western District's Local Rules prescribe the process for referring, investigating, and administering the discipline of attorneys who are alleged to have violated the Rules of Professional Conduct.**

The Local Rules mandate specific standards and procedures to govern the investigation and resolution of potential professional misconduct. Here, the Show Cause Order indicates the Court believes there may have been a violation of Rules 3.6 and 4-8.2. [Doc. 115]. Local Rule 83.6(a) vests the power to discipline attorney misconduct[8] in the Western District en banc, rather than to a particular judge—even the judge in a particular proceeding in which the attorney is involved.

"Except as specified in Rule 83.6(c)," Local Rule 83.6(d) "governs the process of disciplining attorneys admitted to this Bar that have committed misconduct." L.R. 83.6(d). Local Rule 83.6(c) provides specific procedures for attorneys convicted of crimes (83.6(c)(2)) or those disciplined in other courts (83.6(c)(3)), but Local Rule 83.6(d) governs actual or alleged violations of the rules of professional responsibility short of one of the two aforementioned categories:

> When misconduct, or allegations which, if substantiated, would constitute a misconduct, on the part of an attorney admitted to this Bar come to the attention of the Clerk or a judge, whether by complaint or otherwise, and the applicable procedure is not otherwise mandated by this Rule, the Clerk must initiate a disciplinary investigation."

L.R. 83.6(d)(1).

---

[8] "Misconduct" as defined in the Local Rules specifically includes alleged violations of the Rules of Professional Conduct. See L.R. 83.6(c)(1) ("An attorney admitted to this Bar has committed misconduct if he or she violates the District's adopted Code of Professional Responsibility, whether by act or omission, whether committed individually or in concert with any other person or persons, and whether committed in the course of an attorney client relationship or the practice of law. The District's Code of Professional Responsibility is the Rules of Professional Conduct adopted by the Supreme Court of Missouri, except as otherwise provided by specific order of the Court en banc after consideration of comments by representatives of bar associations within the State.").

"Once a disciplinary investigation is initiated, the Court en banc may refer the matter to an attorney to serve as a special master." L.R. 83.6(d)(2). Alternatively:

> …[I]f the Court en banc does not appoint an attorney to serve as special master, the Court en banc must undertake its own investigation. If the Court en banc determines that there is probable cause to believe that an attorney has violated Rule 83.6(c), the Court en banc must serve on the attorney under investigation an order that contains a short and plain statement of each ground for discipline and that directs the respondent to show cause why he or she should not be disciplined. The respondent may, within 30 days, file an answer identifying any disputed issues of fact and any matters in mitigation."

L.R. 83.6(d)(2)(B). "If the respondent's response to the show cause order raises any issue of fact or gives notice of issues on which the respondent wishes to be heard in mitigation, the Court en banc must set the matter for a hearing." L.R. 83.6(d)(3)(A). "If no hearing panel is required, then the Court en banc must determine the appropriate discipline, if any, and terminate the proceeding." L.R. 83.6(d)(3)(B).

In reviewing similar rules under the District of Minnesota's Rule 83.6, the Eighth Circuit took issue with the District's disciplining of an attorney without following its own procedures:

> [W]e are concerned about the district court's failure to follow the local rules for the district of Minnesota in suspending Van Sickle. Local Rule 83.6 contains very detailed and specific provisions concerning the procedures to be followed in suspending or disbarring an attorney from the practice of law in the district of Minnesota.
>
> "[A] district court's inherent power to discipline attorneys who practice before it does not absolve the court from its obligation to follow the rules it created to implement its exercise of such power." *United States Dep't of Justice v. Mandanici,* 152 F.3d 741, 745 n. 12 (8th Cir.1998). We have previously noted with favor that a federal district "assiduously complied" with the local rules in disciplining an attorney. *In re Fletcher,* 424 F.3d 783, 793 (8th Cir.2005).

*Willhite*, 459 F.3d at 871.

Local Rule 83.6 and the procedures described therein provide the exclusive mechanism for resolving allegations that an attorney has violated the District's Rules of Professional Conduct, as

borrowed from the Missouri Supreme Court's Rule 4. The Local Rules provide due process, including investigatory fact finding, the chance to present mitigating circumstances, and the opportunity for a hearing before the Western District en banc. At least where the basis of discipline is a post-adjudication violation of the Rules of Professional Conduct adopted under the Local Rules, those Rules do not contemplate that the complainant-judge should be the sole arbiter of whether the attorney is sanctioned or disciplined.[9]

Plaintiffs suggest that, based on the arguments contained herein, the Court should find that the Rules of Professional Conduct were not violated and should refrain from referring the matter to the Clerk for investigation and resolution. However, if the Court believes that Ms. Hermann did engage in misconduct by violating the Rules of Professional Conduct, then Ms. Hermann is entitled to the process afforded under the Local Rules before any sanctions or discipline are imposed. *See In re Fletcher*, 424 F.3d 783, 793 (8th Cir. 2005) (describing procedures under the local rules and upholding attorney discipline after noting that "[t]he Western District and Appointed Counsel assiduously complied with the procedures established in the Western District's local rules.").

**B. If the Court intends to exercise inherent authority to impose sanctions even after resolving the merits of the case, that authority is similarly limited.**

**1. This Court lacks inherent authority to impose sanctions under either Rule 3.6 or 4-8.2 for conduct that post-dates adjudicative proceedings before the Court and can have no adverse effect on that proceeding.**

A district court's inherent authority exists only to regulate proceedings pending before the court or to enforce its own prior orders after resolution of the merits when the exercise of that authority is necessary to preserve the proper administration of justice. It is one of "[c]ertain implied powers [which] must necessarily result to our Courts of justice from the nature of their institution,"

---

[9] Plaintiffs likewise acknowledge Local Rule 83.6(k) but note that this is not a proceeding for contempt under Title 18 of the United States Code or under Fed. R. Crim. P. 42.

powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *United States v. Hudson,* 7 Cranch 32, 34, 3 L.Ed. 259 (1812); *see also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing *Hudson*). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn,* 6 Wheat. 204, 227, 5 L.Ed. 242 (1821); see also *Ex parte Robinson,* 19 Wall. 505, 510, 22 L.Ed. 205 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.,* 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1388–1389, 8 L.Ed.2d 734 (1962). *See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (inherent authority to sanction).

With respect to sanctions, district courts, for example, retain jurisdiction to enforce a prior sanctions order after the resolution of the merits. *See Perkins v. Gen. Motors Corp.*, 965 F.2d 597, 599 (8th Cir. 1992) (holding district court retained jurisdiction to resolve sanctions issue when sanctionable conduct occurred before case was settled and voluntarily dismissed, in part because the "district court had subject-matter jurisdiction over the case when the sanctions were ordered"). They may also retain jurisdiction where the sanctionable conduct occurred before the case was resolved, but the Court merely delayed resolving the issue of sanctions or attorney's fees until after a merits resolution. *See Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 (8th Cir. 1998) (holding district court retained jurisdiction to impose sanctions after granting summary judgment where notice of appeal had been filed but sanctionable conduct occurred prior to summary judgment decision).[10]

_____

[10] Notably, both *Perkins* and *Gundacker* involved the imposition of sanctions pursuant to rule or statute (Rules 11, 16, and 26, and 28 U.S.C. § 1927), rather than an ethical rule or the Court's inherent authority.

But here, the potentially sanctionable conduct at issue—Ms. Hermann's statements—occurred after the Court granted summary judgment and awarded attorney's fees to Defendants, and after both of those decisions had already been appealed by Plaintiffs. The statements at issue were made after this proceeding was resolved, after notices of appeal were filed, and when there was no proceeding that would foreseeably continue before the Court. *Liddell*, 73 F.3d at 822 (appeal divests district court of jurisdiction on issues subject to appeal) (citations omitted). As noted above in the analysis of Section 3.6, there is no pending adjudicative proceeding to protect, nor is there an order—such as a protective order or some form of injunctive relief—that the Court has retained jurisdiction to enforce, and that it is attempting to enforce by raising the issue of sanctions. Accordingly, the inherent authority to sanction cannot form the basis for judicial action here; instead, if the Court wishes to push forward, the appropriate recourse here would be a referral pursuant to the procedures outlined in Local Rule 83.6.

2. **The Court's inherent authority to award attorney's fees as a sanction requires a finding of bad faith, which is not present here.**

The various rules which typically govern sanctions in federal court—including Rules 11 and 37—have no application to extrajudicial comments made by an attorney. Thus, although Plaintiff maintains that the Court must adhere to the Western District's own attorney discipline process if the Court believes Ms. Hermann violated the Rules of Professional Conduct (see Section III.A, *supra*), the Court specifically asked Plaintiffs to address why Ms. Hermann should not be "sanctioned" for the alleged violations of the Rules of Professional Conduct.

Inherent authority is not without limits. "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)). In *Roadway Express,* a party failed to comply with discovery orders and a court order concerning the schedule for filing briefs. 447 U.S. at 755.

After determining that 28 U.S.C. § 1927, as it then existed, would not allow for the assessment of attorney's fees, the Supreme Court remanded the case for a consideration of sanctions under *both* Federal Rule of Civil Procedure 37 *and* the court's inherent power, while recognizing that invocation of the inherent power would require a finding of bad faith. *Id.* at 767.

*Chambers* also required a showing of bad faith in order to award fees, holding that the court "must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees…" 501 U.S. at 51 (citing *Roadway Express*, 447 U.S. at 767). The Eighth Circuit also requires bad faith before a court may assess attorney's fees against a party for conduct in litigation. *See Lamb Eng'g & Const. Co. v. Nebraska Pub. Power Dist.*, 103 F.3d 1422, 1435 (8th Cir. 1997).

Most commonly, sanctions against an attorney pursuant to a Court's inherent authority take the form of an assessment of attorney's fees, particularly where the sanctionable conduct increases the cost to the opposing party. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 103–04 (2017) ("In this case, we consider a federal court's inherent authority to sanction a litigant for bad-faith conduct by ordering it to pay the other side's legal fees. We hold that such an order is limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith."). "The purpose of allowing courts to impose sanctions based on their inherent authority is two[-]fold: one, to allow the court to vindicate judicial authority without resort to the more drastic sanctions like contempt of court; [two], to make a prevailing party whole for expenses caused by his opponent's obstinacy." *A.J.H. ex rel. M.J.H. v. M.A.H.S.*, 364 S.W.3d 680, 682 (Mo. App. W.D. 2012) (citing *Chambers*, 501 U.S. at 46).

Here, the Court has already assessed all of Defendants' fees and costs against Plaintiffs. Further, the specific rules and conduct cited by the Court do not involve Defendants and nothing about the statements of April 11 to April 13, now removed, can have caused Defendants to incur additional legal fees. Awarding any additional fees to the opposing party based on the actual or alleged violation of Rules of Professional Conduct meant to safeguard the judiciary itself would be disproportionate and insufficiently tied to the offending conduct.

*Chambers* requires that a court "must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." 501 U.S. at 50. "While there is no concrete definition of 'bad faith,' it embraces something more than bad judgment or negligence." *A.J.H.*, 364 S.W.3d at 683. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Id.* (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. banc 1986)). "Bad faith" embraces something more than bad judgment or negligence. *State ex rel. Twiehaus v. Adolf,* 706 S.W.2d 443, 447 (Mo. banc 1986).

Here, for the reasons explained above, Ms. Hermann did not act in bad faith in making the statements. While she acknowledges that she could have used less impassioned language, that reflects fervor and perhaps a failure to moderate her choice of words, rather than dishonesty, moral obliquity, or ulterior motives "partaking of the nature of fraud." *Id*.

**3. If the Court considers imposing a sanction other than assessing attorney's fees, that decision is nevertheless subject to procedural safeguards and due process considerations.**

*Chambers* and its progeny are clear that an explicit finding of bad faith is necessary to impose attorney's fees under the Court's inherent authority. That line of cases does not, however,

delineate what findings must be made or what procedures must be followed for a Court to invoke its inherent authority to punish attorney misconduct by imposing a sanction other than fee shifting, such as a reprimand.[11] Plaintiffs reiterate that the imposition of any sanction or attorney discipline in this matter must adhere to the rules and procedures laid out in Local Rule 83.6.

**CONCLUSION**

SLF and the Plaintiffs respectfully disagree with the Court's reasoning in its summary judgment and attorney's fees decisions, as demonstrated by both their statements and notices of appeal. They have the right (and SLF has the duty) to express in briefing and public statements their critical opinions, analysis, and commentary. While Ms. Hermann emphatically apologizes for her April 11 statement and has promised not to repeat anything like it, this and other statements cannot have prejudiced an adjudicative proceeding and were not knowingly or recklessly false statements about the integrity of this Court. These were not violations of Rules 3.6 or 4-8.2, and are expressions of opinion protected by the First Amendment. If the Court disagrees, Plaintiffs respectfully request that the Court adhere to the procedures of Local Rule 83.6 in determining whether, and to what extent, sanctions or attorney discipline are appropriate.

For these reasons, the Court should not impose sanctions against Plaintiffs or Ms. Hermann for Ms. Hermann's statements for her strong but good-faith criticism of the Court's decision.

---

[11] *Westfall*, 808 S.W.2d at 841 (Blackmar, J., dissenting) ("A public reprimand is a substantial sanction, which must be administered only in accordance with due process of law. *In re Voorhees,* 739 S.W.2d 178, 180 (Mo. banc 1987), citing *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,* 471 U.S. 626, 636–37, 105 S.Ct. 2265, 2274–75, 85 L.Ed.2d 652 (1985) ("The reprimand is a scar on the lawyer's record and, in a case impacting the First Amendment, has an obvious chilling effect on further expression.").

Respectfully submitted this fourth day of May, 2023.

/s/ Edward D. Greim
Edward D. Greim
MO Bar No. 54034
Graves Garrett LLC
1100 Main Street, Suite 2700
Kansas City, MO 64105
Telephone: 816-256-3181
edgreim@gravesgarrett.com

Kimberly S. Hermann*
GA Bar No. 646473
Braden H. Boucek*
TN BPR No. 021399
GA Bar No. 396831
Celia H. O'Leary*
GA Bar No. 747472
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, GA 30075
Telephone: (770) 977-2131
khermann@southeasternlegal.org
bboucek@southeasternlegal.org
coleary@southeasternlegal.org

*Admitted Pro Hac Vice

Derek H. MacKay MO #59078
Knight Nicastro MacKay, LLC
304 W. 10th Street
Kansas City, MO 64105
Phone: (816) 708-0105
mackay@knightnicastro.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2023, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail

and/or facsimile. Parties may access the filing through the Court's electronic filing system.

*/s/ Edward D. Greim*
Edward D. Greim
Counsel for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

BROOKE HENDERSON and JENNIFER LUMLEY,

      Plaintiffs,

v.

SCHOOL DISTRICT OF SPRINGFIELD R-12, BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF SPRINGFIELD R-12, GRENITA LATHAN, YVANIA GARCIA-PUSATERI, and LAWRENCE ANDERSON,

      Defendants.

Case No. 6:21-cv-03219-MDH

---

## DECLARATION OF KIMBERLY HERMANN

---

I, Kimberly Hermann, pursuant to 28 U.S.C. § 1746, declare:

1. I am General Counsel to the Southeastern Legal Foundation ("SLF") and represent the Plaintiffs in the above captioned matter.

2. Following the Court's Show Cause Order, I immediately took steps to withdraw the statements identified therein, including by removing those statements from Southeastern Legal Foundation's website and social media.

3. At my direction, SLF removed the April 11, 2023, press release from its Website and social media. That press release will no longer be circulated by SLF.

4. After receiving the Show Cause Order, we canceled and declined further interviews.

5. At the time I made the statements identified in the show cause order, it was not my intention to address, let alone impugn, the integrity or qualifications of the Court.

**EXHIBIT A**

Appellate Case: 23-2394    Page: 83    Date Filed: 06/07/2023 Entry ID: 5285178

6. On May 1, 2023, I mailed a letter of apology to Judge Harpool.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 4, 2023

_Kimberly Hermann_
Kimberly Hermann

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

BROOKE HENDERSON, et al,          )
                                  )
                    Plaintiffs,   )
                                  )
vs.                               )          Case No. 6:21-cv-03219-MDH
                                  )
SCHOOL DISTRICT OF                )
SPRINGFIELD R-12, et al.,         )
                                  )
                    Defendants.   )

## ORDER

Before this Court is Attorney Hermann's response to this Court's Order to Show Cause. (Doc. 126). This Court previously ordered Attorney Hermann to show cause as to why statements made to the media related to the above-captioned case fail to violate certain ethical rules in Missouri and Georgia, where Attorney Hermann is licensed. (Doc. 115). Of particular importance is Missouri Rule of Professional Conduct 4-8.2, which prohibits attorneys from making statements known to be untrue or with reckless disregard for the truth.

In response, Attorney Hermann asks this Court to disregard the Missouri Supreme Court's *Westfall* holding. (Doc. 126 at 19). *See Matter of Westfall*, 808 S.W.2d 829, 837 (Mo. 1991) (objective standard appropriate when determining whether attorney spoke with "reckless disregard" of the truth when making statements about judge's integrity). In support, Attorney Hermann suggests subsequent Missouri Supreme Court opinions specifically call into question the objective standard in *Westfall*. Attorney Hermann also suggests certain cases decided by the United States Supreme Court subsequent to *Westfall* also call into question the *Westfall* rationale. This leads Attorney Hermann to conclude, "federal courts should no longer follow *Westfall*'s

reinterpretation of Rule 4-8.2, and instead should follow the Rule's plain text as the interpretation that most closely complies with the First Amendment." (Doc. 126 at 20).

Attorney Hermann, however, overstates any conflict between *Westfall* and subsequent opinions, from both the Missouri and United States Supreme Courts. In *Smith*, the Missouri Supreme Court discharged through a writ of habeas corpus an attorney's criminal contempt conviction. *Smith v. Pace*, 313 S.W.3d 124 (Mo. 2010). The Court specifically noted, "the result of this proceeding has no bearing on any disciplinary measures that may result from the attorney's conduct." *Smith* at 126. The Court vaguely opined that "the scrutiny of a state's interest in regulating lawyer speech may be significantly higher today than when this Court decided *Westfall*." *Smith* at 135. Nothing in *Smith*, however, could reasonably lead to the conclusion the Missouri Supreme Court has overruled, or even reconsidered, *Westfall's* objective standard for violations of Rule 4-8.2.

Similarly, in *Alverez*, the United States Supreme Court makes clear that prior Supreme Court cases explicitly finding false statements unworthy of constitutional protection appear to "derive from cases discussing defamation, fraud, or some other legally cognizable harm associated with a false statement, such as an invasion of privacy or the costs of vexatious litigation*." United States v. Alvarez*, 567 U.S. 709, 719 (2012). Attorney Hermann, however, fails to identify how public statements by an attorney made with reckless disregard for the truth fail to constitute a legally cognizable harm. *See Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S. Ct. 2004, 2016, 44 L. Ed. 2d 572 (1975) ("The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice and have historically been 'officers of the courts.'"). Further, *Alverez*, which concerned the constitutionality

of a federal statute, does little to specifically address the analysis appropriate for matters of attorney discipline.

Whether an objective or subjective standard applies to Rule 4-8.2 violations, however, is, of course, related to, but separate from, the main issue. The focal point is whether Attorney Hermann's specific words violate Rule 4-8.2 as well the other professional rules cited in this Court's original Show Cause Order. Attorney Hermann's response fails to adequately address this matter. While counsel has forwarded a letter of apology to this Court, a copy of which is attached to this order as Exhibit 1, it too fails to directly address whether Attorney Hermann's words are false. Nor does the letter provide any basis for the decision to make the statements. This Court appreciates the letter and the decisions to both remove the statements from the Southeast Legal Foundation website and cancel other scheduled interviews. This Court, however, notes that Attorney Hermann has failed to publicly retract or clarify any prior statement.

A related issue is whether Attorney Hermann's statements constitute an effort to influence the outcome of pending litigation. Attorney Hermann contends the statements are not actionable because she did not intend to influence the outcome of litigation, noting they came after this Court already issued summary judgment. (Doc. 126 at 9). This contention, however, lacks merit. First, damage to the judicial system and professionalism of the bar can still result from statements made after a judicial decision is final. Here, however, the litigation is not final, as counsel is seeking appellate review. If successful on appeal, the matter will revert to this Court for additional consideration. Further, Attorney Hermann's comments led at least one media outlet to inquire as to what steps might be taken to influence the outcome of the case at the appellate level. Altogether, this shows Attorney Hermann's response also fails to adequately address concerns her statements

may impact an adjudicative proceeding, the emphasis underlying Georgia Rule of Professional Conduct 3.6 and Missouri Rule of Professional Conduct 4-3.6.

To be clear, Attorney Hermann's response discusses some parts of the specific statements identified by this Court in its original Show Cause Order. Attorney Hermann, for example, suggests when she described the undersigned as "a lone agenda-driven federal judge," what she intended to say is that this Court's summary judgment and attorney fees orders reflected an "agenda" to chill further lawsuits deemed frivolous. (Doc. 126 at 21-22). Though well-settled that bringing a §1983 lawsuit deemed frivolous introduces the possibility of attorney fees, Attorney Hermann nevertheless argues this somehow constitutes a "potentially troubling and newsworthy development in a new area of the law." (Doc. 126 at 24). Attorney Hermann's response also attempts to address her clam this Court's intent was to "deny 'teachers and parents' a cause of action relating to 'anti-racist' training." (Doc. 126 at 24). This position, however, misquotes Attorney Hermann's original statement, which reads in relevant part, "This is an effort by a lone agenda-driven federal judge to deny concerned teachers and parents the right to seek redress in court." (Doc 115 at 2). The scope of the original statement is far broader than that of the misquoted statement reflected in Attorney Hermann's response. Attorney Hermann's response also fails to address the part of her original statement that suggests this Court's intent was also to "protect so-called 'anti-racist' training in Missouri's public schools." (Doc. 115 at 2). Altogether, Attorney Hermann's response to this Court's original Show Cause Order simply fails to address the main issue at hand: how Attorney Hermann's specific words and sentences fail to violate Georgia Rule of Professional Conduct 3.6 and Missouri Rules of Professional Conduct 4-3.6 and 4-8.2. Put differently, the focal issue is how Attorney Hermann's specific words about this Court do not reflect a reckless disregard for truth.

Therefore, this Court **ORDERS** Attorney Hermann to file, no later than June 9, 2023, a supplementary response to this Court's Show Cause Order, specifically addressing whether particular statements made by Attorney Hermann, identified in the original Show Cause Order, were true and the basis for such belief. Attorney Hermann should identify in detail any research, interviews, or findings, supporting her belief that her statements were true, including prior orders by this Court in other cases. The response should identify any orders by this Court awarding attorney fees in favor of a party against whom a constitutional claim was filed, which Attorney Hermann considered prior to making her statements. The response should also identify any orders by this Court awarding attorney fees in favor of a party filing a constitutional claim, which Attorney Hermann considered. Further, the response should specifically address why Attorney Hermann's statements referred to claims by parents rather than claims by public school employees, subject of the instant litigation. Any case involving parents' constitutional rights considered by Attorney Hermann in making the statements should be specifically identified, including any case in which this Court awarded attorney fees against parents.

**IT IS SO ORDERED.**

Dated: May 24, 2023                                          _/s/ Douglas Harpool_____
                                                            **DOUGLAS HARPOOL**
                                                            **United States District Judge**



560 W. Crossville Rd., Ste. 104
Roswell, Georgia 30075
www.SLFLiberty.org

May 1, 2023

<u>VIA UPS Next Day Air</u>
The Honorable Judge M. Douglas Harpool
United States District Court
   for the Western District of Missouri
222 N. John Q. Hammons Parkway
Suite 3100
Springfield, MO 65806

      Re:  My statements to the media regarding the Court's decisions in *Henderson, et al., v.*
           *School District of Springfield R-12, et al.,* 6:21-cv-03219

Your Honor:

After the Court's recent decision awarding attorneys' fees under 42 U.S.C. § 1988, I authorized the following statement to the media: "This is an effort by a lone agenda-driven federal judge to deny concerned teachers and parents the right to seek redress in court and to protect so-called 'anti-racist' training in Missouri's public schools." I apologize.

Additionally, out of respect for Your Honor and the judiciary as an institution, we removed all of the statements mentioned in the Court's show cause order from our website and social media. We also ceased distribution of the statement and related media advisory and canceled scheduled interviews. As we carry out our professional duty as a public interest law firm to engage in zealous advocacy and express our concerns with the rulings in this case, I can promise that we will not again use this language or anything like it. We recognize that the Court honestly and sincerely came to its opinions and does not deserve to be characterized as a "lone agenda-driven federal judge."

We, too, honestly and sincerely came to our own positions. We have disagreed with the Court's rulings and are seeking review in the Eighth Circuit. We also believe that sanctions are not warranted here, as we will relate in our forthcoming response to the Show Cause Order. But independent of those considerations and the law that informs them, the Court deserves this apology.

                        Respectfully,

                        *Kimberly S. Hermann*

                        Kimberly Hermann

cc: Ransom Ellis

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BROOKE HENDERSON and JENNIFER LUMLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 6:21-cv-03219-MDH |
| | ) | |
| SCHOOL DISTRICT OF SPRINGFIELD R-12, BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF SPRINGFIELD R-12, GRENITA LATHAN, YVANIA GARCIA-PUSATERI, and LAWRENCE ANDERSON, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION TO REFER OR RECUSE WITH SUGGESTIONS IN SUPPORT

**COME NOW** Plaintiffs Brooke Henderson and Jennifer Lumley, and Attorney Kimberly Hermann, pursuant to Local Rule 83.6, 28 U.S.C. § 455, and the Due Process Clause of the Fifth Amendment, and, for the reasons stated in the incorporated suggestions in support, move this Court to refer its disciplinary investigation to the Western District *en banc*, or, in the alternative, to recuse.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION .............................................................................................. 1

STATEMENT OF FACTS ................................................................................... 4

    A. Attorney Hermann's Statements ....................................................... 4

    B. The Court's Show Cause Order ......................................................... 4

    C. Plaintiffs' Response ............................................................................ 5

    D. The Court's Second Order of May 24, 2023 ..................................... 6

ARGUMENT ..................................................................................................... 8

    I.     The Court must transfer consideration of any discipline of
           Ms. Hermann to the Western District *en banc* in accordance
           with the Western District's Local Rules. .......................................... 8

    II.    If the Court will not transfer consideration of this matter to the
           Western District *en banc*, the Court should recuse itself from the
           investigation and imposition of any discipline. ................................ 11

           a. Due process requires recusal to avoid the Court serving as
               both the accuser and adjudicator of whether misconduct
               occurred. ...................................................................................... 12

               i.     The Second Show Cause Order places the Court
                     in the position to divine his own intent and
                       determine if Ms. Hermann's statements
                     regarding his intent are "true." ...................................... 12

               ii.    Due process prohibits the Court from serving as
                     the judge of its own complaint. ...................................... 14

            b. Recusal is required under 28 U.S.C. § 455 ............................... 17

    III.   Plaintiffs respectfully request an administrative stay while this
           Court takes up this request. ............................................................. 19

CONCLUSION .................................................................................................. 19

Case 6:21-cv-03219-MDH   Document 129   Filed 06/02/23   Page 2 of 24
Appellate Case: 23-2394   Page: 92   Date Filed: 06/07/2023 Entry ID: 5285078   APPX 52

# TABLE OF AUTHORITIES

**Case**                                                                                          **Pages**

*Caperton v. A.T. Massey Coal Co.,*
    556 U.S. 868 (2009) ........................................................................... 15

*Cooke v. United States,*
    267 U.S. 517 (1925) ....................................................................... 15, 16

*In re Fletcher,*
    424 F.3d 783 (8th Cir. 2005) ........................................................... 8, 11

*In re Murchison,*
    349 U.S. 133 (1955) ....................................................................... 14, 15

*Jetton v. McDonnell Douglas Corp.,*
    121 F.3d 423 (8th Cir. 1997) ................................................................ 8

*Liteky v. U.S.,*
    510 U.S. 540 (1994) ........................................................................... 17

*Offutt v. United States,*
    348 U.S. 11 (1954) ......................................................................... 15, 16

*Standing Comm. v. Yagman,*
    55 F.3d 1430 (9th Cir. 1995) .............................................................. 16

*United States Dep't of Justice v. Mandanici,*
    152 F.3d 741 (8th Cir. 1998) ................................................................ 8

*Willhite v. Collins,*
    459 F.3d 866 (8th Cir. 2006) ................................................................ 8

*Williams v. Pennsylvania,*
    579 U.S. 1 (2016) ............................................................................... 14

**Statutes**

28 U.S.C. § 455 ................................................................................ *passim*

28 U.S.C. § 2071 ...................................................................................... 8

**Court Rules**

Ga. R. Prof. Cond. 3.6 ..................................................................... *passim*

Case 6:21-cv-03219-MDH   Document 129   Filed 06/02/23   Page 3 of 24
Appellate Case: 23-2394   Page: 93   Date Filed: 06/07/2023 Entry ID: 5285476   APPX 53

Mo. Sup. Ct. R. 4-1.6 .................................................................................... 11

Mo. Sup. Ct. R. 4-3.6 .................................................................................. *passim*

Mo. Sup. Ct. R. 4-8.2 .................................................................................. *passim*

Western District L.R. 83.5 ........................................................................ 1, 5, 11

Western District L.R. 83.6 ......................................................................... *passim*

Case 6:21-cv-03219-MDH   Document 129   Filed 06/02/23   Page 4 of 24

Appellate Case: 23-2394   Page: 94   Date Filed: 06/07/2023 Entry ID: 5285178   APPX 54

## INTRODUCTION

At the core of the current proceeding is an issue now being litigated in the Eighth Circuit. Plaintiffs have appealed this Court's finding that their civil rights claims were frivolous and its award of all attorneys' fees expended and sought by the government Defendant. After that appeal, Plaintiffs' counsel Kimberly Hermann sharply criticized the Court's decisions. She then apologized to the Court, withdrew the statements from counsel's website, and canceled and ceased additional media interviews. Plaintiffs continue to argue in the Eighth Circuit (now, supported by amici from across the ideological spectrum) that this Court's fee award was excessive; contrary to the spirit of 42 U.S.C. §1988; extraordinary when compared to other cases; and, at the very least, likely to chill not only lawsuits like the underlying case, but all civil rights litigation.

On April 18, 2023, this Court issued an Order to Show Cause, stating that "Plaintiffs are ORDERED to show cause no later than April 20, 2023 as to how Attorney [Kimberly] Hermann's statements fail to violate [Rules of Professional Conduct 3.6 and 8.2], made applicable through [Local Rules] 83.5 and 83.6, and why sanctions should not be imposed for any such violation." [Doc. 115 at 2]. The Order hinted, but did not expressly state, that the Court was conducting an investigation and making determinations reserved to the Western District *en banc*, under Western District Local Rule 83.6(d). Plaintiffs raised this issue in their May 4 response. [Doc. 126.]

Now, however, the Order of May 24, 2023 [the "Second Order," Doc. 128] removes any ambiguity. It explicitly recasts the original Order as demanding a response from "Attorney Hermann" rather than Plaintiffs; it explicitly recasts Plaintiffs' May 4th Response as the response of "Attorney Hermann;" and now, finding that response unsatisfactory, explicitly demands that "Attorney Hermann" respond to an investigation into the materials she "considered" in making her statements. Although any judge of this District may "initiate" an investigation, ***it is the en banc***

1

***Court*** that "must undertake its own investigation" if it does not appoint a special master or refer the matter to a state bar. Local Rule ("LR") 83.6(d)(2)(A) and (B). Regardless of which route the *en banc* Court chooses, the Local Rules include procedural safeguards, such as a finding by the Court *en banc* of probable cause; a "short and plain statement" of the grounds for potential discipline in an Order to Show Cause allowing for a response from the accused; a three-judge hearing of disputed facts raised in the response that, importantly, ***does not involve the complaining judge***; and approval by the Court *en banc* of the hearing panel's findings and recommendations. LR 83.6(d)(3).

The Court's Second Order, and its recasting of the original Order, makes clear that this is an investigation into Attorney Hermann for purposes of punishing her outside of the required process and protections of Local Rule 83.6. For that reason, this Court should terminate its investigation and, if it desires, forward or relinquish this matter to the attention of the Chief Judge so that it can be taken up by the Western District *en banc*.

The Second Order also presages due process violations. The Court has now adopted an interpretation of Rules 3.6 and 8.2[1] that will require it to consider evidence and reach conclusions that make the Court the judge of its own case. Attorney Hermann's core criticism of the Court's fee award—made in her Statements after the case was on appeal, and then in Eighth Circuit briefing—is that it is extraordinary, and has the inescapable effect and, based on the Court's own statements in this case, the intent, of chilling future lawsuits. Plaintiffs' response to the April 18 Order, then, were that her Statements were: (1) not about the Court's integrity or qualifications; and (2) her own opinions and analysis, rationally based on the express statements of the Court on the record and in its decisions, that mirrored Plaintiffs' arguments in the Eighth Circuit.

---

[1] At issue are Missouri Supreme Court Rules 4-3.6 and 4-8.2, and Georgia Rule of Professional Conduct 3.6, which mirrors its Missouri counterpart. This motion will hereinafter reference the rules as "Rule 3.6" or "Rule 8.4."

2

Case 6:21-cv-03219-MDH   Document 129   Filed 06/02/23   Page 6 of 24
Appellate Case: 23-2394   Page: 96   Date Filed: 06/07/2023 Entry ID: 5285472   APPX 56

In the Second Order, the Court has rejected those positions. It has decided that Attorney Hermann's statements were public criticisms of the Court's own integrity and qualifications. It has decided that they are statements of fact about what the Court subjectively intended when it awarded fees. Finally, the Court has decided that Attorney Hermann bears the burden of proving her asserted "fact" about its intent is true, and convincing the Court that its internal conviction about its own subjective intent has been mistaken. If the Court believes its subjective intent cannot be fairly derived from its decisions and statements on the record in this case, but is instead a "fact" known only to the Court, the Court necessarily becomes the finder of "facts" known only to it. Even more troubling, it relates to a matter that this Court believes implicates its integrity and qualifications. Under the Court's logic, it can only *avoid* punishing Attorney Hermann if it concludes that its own integrity and qualifications are indeed worthy of criticism, and that it did, after all, intend to chill future lawsuits by awarding fees. That is not an inquiry that this or any Court should undertake for itself, under both the Due Process Clause and the federal recusal statute, 28 U.S.C. § 455. Thus, if for any reason the Court chooses not to relinquish this matter to the Western District, it must recuse.

Plaintiffs recognize that this motion invites the Court to make what may be difficult decisions. They therefore respectfully request an administrative stay of the Second Order while the Court takes it up, and an extension of their deadline to respond to the Second Order of ten days from any decision by this Court declining to relinquish the matter or recuse.

3

Case 6:21-cv-03219-MDH   Document 129   Filed 06/02/23   Page 7 of 24
Appellate Case: 23-2394   Page: 97   Date Filed: 06/07/2023 Entry ID: 5285178 APPX 57

# STATEMENT OF FACTS

## A. Attorney Hermann's Statements

1.   After the Court's decisions in this case granting summary judgment in favor of the Defendants and requiring Plaintiffs to pay Defendants' attorney's fees, and the filing of the appeals therefrom, Attorney Hermann made three sets of statements (the "Statements") regarding the Court's decisions which are at issue.

2.   The first statement comes from an April 11, 2023, press release issued by Southeastern Legal Foundation which quotes "SLF General Counsel Kim Hermann" as saying: "This is an effort by a lone agenda-driven federal judge to deny concerned teachers and parents the right to seek redress in court and to protect so-called 'anti-racist' training in Missouri's public schools." (the "April 11th Statement").

3.   The second, made in an April 12, 2023, interview with Newsmax, said that the Court's decision "is closing the courthouse doors" and that "this will prevent every single person that has a potential First Amendment claim against the government…from ever being able to bring a lawsuit" (the "April 12th Statement"). The April 12th Statement drew a question from the Newsmax host regarding Plaintiffs' appeal currently pending before the Eighth Circuit; the host asked, "How can we help? How can we get ahold of these guys?"

4.   The third statement, in an April 13, 2023, interview with Fox News, said that the "point" of the Court's ruling on attorney's fees "is to chill speech" and that the "intent of [the decision] is to stop parents and teachers from ever bringing a lawsuit again" (the "April 13th Statement").

## B. The Court's Show Cause Order

5.   On April 18, 2023, the Court issued a Show Cause Order [Doc. 115] identifying Ms. Hermann's three statements above and ordering Plaintiffs:

4

> [T]o show cause no later than April 20, 2023 as to how Attorney Hermann's statements fail to violate Georgia Rule of Professional Conduct 3.6 and Missouri Rules of Professional Conduct 4-3.6 and 4-8.2, made applicable through United States District Court for the Western District of Missouri Local Rules 83.5 and 83.6, and why sanctions should not be imposed for any such violation.

*Id.* at 2.

### C. Plaintiffs' Response

6. Plaintiffs retained the undersigned counsel for the response, which the Court allowed Plaintiffs to file on May 4, 2023. [Doc. 126]. Southeastern Legal Foundation removed all the Statements from its website, and declined and withdrew from further interviews, and Plaintiffs' counsel repeatedly represented that it was taking all of these steps in a public filing. *Id.* at 8. Attorney Kim Hermann also apologized to the Court in a separate letter. *Id.*

Plaintiffs argued that Attorney Hermann's statements complied with Rules 3.6 and 8.2.

7. Tracking the language of Rule 3.6, Plaintiffs showed that Ms. Hermann neither "knew" nor "reasonably should have known" that the statements "will have a *substantial* likelihood of *materially prejudicing* an adjudicative proceeding in the matter," because, having been made after the filing of the Notice of Appeal, they were far removed from the type of matter in which courts apply Rule 3.6. (emphasis added). Specifically, the rule is almost never applied in a civil, bench-tried case with few factual disputes (and none material), and if the matter does return to this or any Court, it will be at least six months from now. [Doc. 126 at 6-9].

8. With respect to Rule 8.2, which states that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge," Plaintiffs showed as follows:

    a. The Statements criticizing the basis for this Court's decision were not statements concerning the "qualifications or integrity of a judge." [Doc. 126 at 10, 13, 15, 19].

    b. The accuser bears the burden of establishing falsity. *Id.* at 10.

c. Related to point 2, statements of opinion or hyperbole are not statements of fact and therefore cannot fall within the rule. The context was clear that the Statements were an attorney's opinion criticizing the basis for this Court's decision. The basis for this opinion was detailed at length with cites to the Court's own statements on the record and in its decisions. *Id*. at 11, 13-19.

d. If the Court were to resolve all of the above against the speaker and reach the rule's scienter requirement—that the lawyer must know the statement to be false or must speak with reckless disregard—the Court should apply the subjective First Amendment-based standard from which the language of the rule was derived, rather than cases like *Matter of Westfall*, 808 S.W.2d 829, 837 (Mo. banc 1991) that hold a less-protective, objective standard is required. *Id*. at 11-13. Under either standard, the Statements passed muster. *Id*. at 13-19.

e. If despite all of this, the Court was inclined to impose sanctions, Plaintiffs challenged the constitutionality of Rule 8.2. [Doc. 126 at 20-23].

9. Finally, Plaintiffs showed that if the Court intended to investigate and impose discipline against an attorney for violations of the Rules of Professional Conduct, rather than to exercise its inherent power to sanction parties to maintain control of ongoing proceedings, the matter must be transferred to the Western District under Local Rule 83.6. *Id*. at 23-26. Plaintiffs also showed that due process concerns impose limits on any power to sanction parties in a proceeding. *Id*. at 26-31.

**D.  The Court's Second Order of May 24, 2023**

10. On May 24, 2023, this Court met this response with a second Order that found Plaintiffs' May 4th response "fails to address the main issue at hand," and "fails to adequately address this matter." [Doc. 128 at 3-4.] The Court characterized Plaintiffs' filing as "Attorney Hermann's response" to the Order to Show Cause. *Id*. at 1. Similarly, it recast its original Order to Show Cause, which had been directed to "Plaintiffs" (*see* Doc. 118 at 2: "***Plaintiffs*** are **ORDERED** to show cause…") stating instead that "This Court previously ordered ***Attorney Hermann*** to show cause…" [Doc. 128 at 1 (italics added for emphasis)].

11. After beginning with a discussion on *Westfall*, the Court identified two specific concerns with Plaintiffs' response. First, it faulted Attorney Hermann's letter of apology because it "fails to directly address whether Attorney Hermann's words are false." [Doc. 128 at 3]. Second, it stated

6

that "the focal issue is how Attorney Hermann's specific words about this Court do not reflect a reckless disregard for truth." *Id*. at 4. Relying on this point, it ordered "Attorney Hermann to file" by June 9, 2023, a "supplementary response" "specifically addressing whether [the Statements]…were true and the basis for such belief." *Id*. at 5. The Court went on to list specific facts Ms. Hermann would need to establish "her belief that the statements were true," including:

- Specifically addressing whether particular statements made by Attorney Hermann, identified in the original Show Cause Order, were true and the basis for such belief;
- Identifying in detail any research, interviews, or findings, supporting her belief that her statements were true, including prior orders in other cases;
- Identifying any orders by this Court awarding attorney fees in favor of a party against whom a constitutional claim was filed, which Attorney Hermann considered prior to making her statements;
- Identifying any orders by this Court awarding attorney fees in favor of a party filing a constitutional claim, which Attorney Hermann considered;
- Specifically addressing why Attorney Hermann's statements referred to claims by parents rather than claims by public school employees, subject of the instant litigation; and,
- Identifying any case involving parents' constitutional rights considered by Attorney Hermann in making the statements, including any case in which this Court awarded attorney fees against parents.

*Id*. at 5.

7

Case 6:21-cv-03219-MDH   Document 129   Filed 06/02/23   Page 11 of 24
Appellate Case: 23-2394   Page: 101   Date Filed: 06/07/2023 Entry ID: 5285738
APPX 61

**ARGUMENT**

**I.    The Court must transfer consideration of any discipline of Ms. Hermann to the Western District *en banc* in accordance with the Western District's Local Rules.**

The Western District of Missouri has, pursuant to its statutory authority, promulgated rules of practice and procedure which provide the sole mechanism for this Court to investigate, adjudicate, and, if appropriate, punish an attorney for violations of the Rules of Professional Conduct in this District. Accordingly, this Court must immediately cease its investigation and, if it desires, transfer or relinquish this matter to the Court *en banc* for an investigation and decision that complies with Local Rule 83.6(d)(2).

The Court *en banc* possesses inherent authority to prescribe its own rules of practice and procedure. *See* 28 U.S.C. § 2071(a). Those rules remain in effect unless modified or abrogated by the Eighth Circuit Judicial Counsel. § 2071(c). Once enacted, local rules have the force and effect of law and bind the parties and the court which promulgated them until they are changed in an appropriate manner. *See Jetton v. McDonnell Douglas Corp.*, 121 F.3d 423, 426 (8th Cir. 1997). This is true not only as a matter of federal statute, but as a matter of Fifth Amendment Due Process; by enacting a formal process for reviewing violations of the Rule of Professional Conduct, the *en banc* Court laid out a mandatory minimum process to which an attorney is "due."

Adherence to the local rules is particularly important in cases of attorney discipline. In such matters, due process requires, at a minimum, notice and an opportunity to be heard, "and that the district court follow its procedural rules governing attorney discipline." *In re Fletcher*, 424 F.3d 783, 792 (8th Cir. 2005). Crucially, "a district court's inherent power to discipline attorneys who practice before it does not absolve the court from its obligation to follow the rules it created to implement its exercise of such power." *United States Dep't of Justice v. Mandanici*, 152 F.3d 741, 745 n. 12 (8th Cir. 1998); *see also Willhite v. Collins*, 459 F.3d 866, 871 (8th Cir. 2006). When

8

confronted with situations in which a district court did not comply with its own local rules regarding attorney discipline, the Eighth Circuit has remanded for further proceedings with explicit instructions to "follow the procedures of its local rules." *Id*.

Local Rule 83.6(d)[2] articulates in detail the mandatory and exclusive procedure for investigating allegations of misconduct and conducting disciplinary proceedings. "When misconduct, or allegations which, if substantiated, would constitute misconduct… come to the attention of a judge, whether by complaint or otherwise… the Judge may initiate a disciplinary investigation." LR 83.6(d)(1). Importantly, although any individual judge may *initiate* an investigation, the Local Rules do not contemplate or provide for an individual judge to also *conduct* and direct the investigation. Instead, this investigatory role is solely vested in the Court *en banc*. *See* LR 83.6(d)(2)(A)-(C).

Once an investigation has been initiated by a judge, the role of the individual judge ceases and the Court *en banc* is presented with four options. First, it may refer the matter to an attorney to serve as a special master. LR 83.6(d)(2)(A). That special master may then "perform any appropriate task, including investigating the case, determining whether probable cause exists to believe that an attorney has violated rule 83.6(c), prosecuting a formal disciplinary proceeding, and formulating another appropriate recommendation." LR 83.6(d)(2)(A)(i). Importantly, after the special master conducts an investigation, the special master "must demonstrate" any recommendation that probable cause be found "to the Court en banc." LR 83.6(d)(2)(A)(iii). The

---

[2] Plaintiffs' May 4, 2023 Response to Order to Show Cause mistakenly cited a version of the Rule 83.6(d) that was superseded on December 1, 2022, but that is still available online. The primary change is that subsection (d)(1) of the old Rule assigned the duty to "initiate" an investigation to "the Clerk," and now under that same subsection, either a judge or the "Chief Judge" may "initiate" an investigation. Under both versions, the conduct and direction of the investigation and all subsequent proceedings remain under the control of the Court en banc rather than any complaining judge. See LR 83.6(d).

9

*en banc* Court then directs the attorney to show cause why he or she should not be disciplined, identifying any factual disputes or matters in mitigation. *Id*.

Second, if the Court *en banc* does not appoint an attorney to serve as special master, the Court *en banc* "must undertake its own investigation." LR 83.6(d)(2)(B). It then determines whether there is probable cause to believe that the attorney has violated Local Rule 83.6(c). *Id*. If the Court *en banc* determines misconduct has occurred, it must then serve the show cause order—an order that contains a short and plain statement of each ground for discipline and that directs the respondent to show cause why he or she should not be disciplined. *Id*.

The third option available to the Court *en banc* is that it may refer the matter to the disciplinary authorities for the appropriate state bar to investigate. LR 83.6(d)(2)(C).

The final option available to the Court *en banc* is that it may, at any time, conclude that a disciplinary investigation is not warranted and that no disciplinary action will be taken.

Importantly, though the Local Rules vest authority in the Court *en banc* (or a special master appointed by the Court *en banc*) to actually conduct an investigation, the Local Rules do not confer investigatory authority on any individual judge, let alone the complaining judge. Rather, individual judges only possess discretion to *initiate*—not conduct—an investigation. This makes sense. As explained more completely below, a plethora of due process concerns arise when a complainant-judge then presides over the ensuing investigation and adjudication of the accuracy and propriety of statements made about that same judge. *See* Section II(a)(ii), *infra*. And as a practical matter, where (as in the Second Order at page 5) the investigation forces a party to publicly disclose its confidential attorney work product to the complaining party (this Court) and the opposing party while that very matter is being litigated (now on appeal in the Eighth Circuit), it directly impinges upon counsel's ability to zealously litigate and counsel's duty to its own client to maintain

confidential information. *See, e.g.*, Mo. Sup. Ct. R. 4-1.6. It also places the Court in the position of reviewing internal work product on a matter that may come back before that very Court were the matter to be remanded and not reassigned. Concerns like these surely motivated the Local Rule.

Here, the Second Order makes clear that this Court is conducting an investigation of Attorney Hermann's state of mind for purposes of Rule 8.2, that it views its orders as compelling her to respond, that it views Plaintiffs' responses as hers, and that it is continuing to consider Missouri and Georgia disciplinary rules because they are "made applicable through United States District Court for the Western District of Missouri Local Rules 83.5 and 83.6." *See* Doc. 118 at 2. This matter is moored to the mandatory procedures of Local Rule 83.6. Therefore, the Court must refer and relinquish this matter to the Court *en banc*.

Though the Court certainly had the discretion under the Local Rules to *initiate* an investigation when Ms. Hermann's statements came to the Court's attention, the Local Rules require that any further proceedings—including the determination of who will investigate, probable cause, and a weighing of factual and other issues—be controlled by the Court *en banc*. *See* Rule 83.6(d)(1). Importantly, that procedure requires that the complaining judge ***not*** sit on a three-judge panel that determines disputed facts. The procedure for investigating and issuing attorney discipline under Local Rule 83.6(d) is both straightforward and mandatory as a matter of due process. *See Fletcher*, 424 F.3d at 792. Accordingly, this Court must cease its investigation and, if it desires, refer and relinquish the matter to the Court *en banc*.

## II. If the Court will not transfer consideration of this matter to the Western District *en banc*, the Court should recuse itself from the investigation and imposition of any discipline.

Aside from the mechanical operation of the Local Rules and the Court's ministerial duty to comply with them, the peculiar substance of the potential disciplinary violations the Court is

11

Case 6:21-cv-03219-MDH   Document 129   Filed 06/02/23   Page 15 of 24
Appellate Case: 23-2394   Page: 105   Date Filed: 06/07/2023 Entry ID: 5283773
APPX 65

investigating improperly render the Court the judge of its own case. Key elements of the Court's apparent disciplinary theories—theories that, to be clear, the Plaintiffs dispute—depend entirely on the Court's untestable, subjective beliefs about its own intent and integrity in awarding fees. Under Rule 3.6, this includes the finding of a reasonable likelihood of material prejudice to an adjudicative proceeding, which the Court now indicates depends in part on prejudice to its own decision-making from the bench should the case be remanded and not reassigned after Plaintiffs' ongoing appeal in the Eighth Circuit. Under Rule 8.2, this includes an assumption that Attorney Hermann's criticism of the Court's decisions went to Your Honor's "integrity and qualifications," that the criticism was not an opinion, rhetorical hyperbole, or analysis that parallels Plaintiffs' current briefing in the Eighth Circuit, but was instead a provably true or false statement about the Court's subjective intent, and that the Court will now decide whether Attorney Hermann correctly stated its own subjective intent on a matter that decides whether the Court acted with integrity. Now that this has become the inquiry, the Court has become the judge of its own case and must recuse.

> a. **Due process requires recusal to avoid the Court serving as both the accuser and adjudicator of whether misconduct occurred.**
>
> > i. **The Second Show Cause Order places the Court in the position to divine his own intent and determine if Ms. Hermann's statements regarding his intent are "true."**

The Second Order was the first time the Court revealed its position and plan for proceeding on several points. These included the following:

(1) "Ms. Hermann," rather than the Plaintiffs, was now being treated as the party obligated to make showings;

(2) The burden would be placed on her to *disprove* the elements of Rule 8.2, including proving truth, rather than placing the burden on the accuser to prove the element of falsity;

(3) The "focal point" on Rule 8.2 has narrowed to the questions of (a) falsity and (b) Ms. Hermann's degree of knowledge of falsity.

(4) As a corollary to point 3, the Statements will now be construed as provably true or false statements of fact about the Court's subjective intent in imposing fees. The controlling question that Ms. Hermann must now prove is "true," before this very Court, is what the Court subjectively intended to do when it imposed fees.

(5) Also, as a corollary to point 3, the Court has necessarily decided every other Rule 8.2 issue regarding the Statements against Ms. Hermann. This includes: (a) construing Statements criticizing the Court's decision as an attack on its integrity or qualifications; (b) deciding that the Statements were not opinions or rhetorical hyperbole; and (c) deciding that, in proving the "truth" of any Statement about the Court's "intent," Ms. Hermann cannot rely on the Court's statements in the record in this case or the text of the Court's decisions themselves. Instead, in order to avoid discipline under Rule 8.2, Ms. Hermann must now establish to this Court's satisfaction that the Court's own prior decisions evidence a trend in favor of chilling constitutional claims, and that this trend justifies Ms. Hermann's statement about this particular decision.

(6) For purposes of Rule 3.6, the Court is at least considering its own reaction to the Statements upon potential remand as "material prejudice" in an ongoing "proceeding."

Thus, it now appears unmistakably that the Court views Ms. Hermann's Statements as expressing a negative view of its own integrity. It intends to treat her criticism of the Court's large award of fees as a provably true or false statement regarding the Court's subjective "intent." The Court will then establish the issue of truth or falsity by examining the Court's own subjective intent. The Court will also establish what parts of its own written decisions and statements on the record in this case are sufficient to controvert the Court's own pre-existing view of its subjective intent, and which of its own decisions or statements were fair for Ms. Hermann to consider. All of these decisions necessarily make the Court the judge of its own case.

Likewise, with respect to Rule 3.6, the Court for the first time suggests that even in a civil, non-jury trial without substantial disputes of fact that has now left the district court and is before the Eighth Circuit, the Court might find itself in a position of "material[] prejudice" in a potential remand at least six months from now. Although it is rare for a civil bench trial to ever implicate

13

Case 6:21-cv-03219-MDH   Document 129   Filed 06/02/23   Page 17 of 24
Appellate Case: 23-2394   Page: 107   Date Filed: 06/07/2023 Entry ID: 5285778

Rule 3.6, particularly long after extrajudicial statements are made, this Court's mode of analysis—weighing its own degree of likely prejudice, a personal factor known only to it—once again makes the Court the judge of its own case. As discussed below, these factors not only underlie Local Rule 83.6, they suggest that based on the revelations in the Second Order, recusal is now appropriate.

### ii. Due process prohibits the Court from serving as the judge of its own complaint.

Given the tripartite role assumed by the Court as (1) the complainant having accused Ms. Hermann of making Statements which violate the Rules of Professional Conduct, (2) the repositor of the sole evidence of its own intent in granting summary judgment and assessing attorney's fees, and (3) the adjudicator of whether or not Ms. Hermann's Statements regarding the Court's subjective intent were "false," and whether such false statement was reasonable, due process requires recusal. A neutral judge (or panel, under the Local Rules) uninvolved with the underlying litigation and not the subject of the statements at issue should decide whether Ms. Hermann's statements violate the Rules of Professional Conduct, including, if necessary, by determining the Court's actual intent in issuing the relevant orders.[3]

Due process guarantees "an absence of actual bias" on the part of a judge. *In re Murchison*, 349 U.S. 133, 136 (1955). "To establish an enforceable and workable framework, the Court's precedents apply an objective standard that, in the usual case, avoids having to determine whether actual bias is present." *Williams v. Pennsylvania*, 579 U.S. 1, 8-9 (2016). The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, "the

---

[3]As addressed above, the Western District's Local Rule 83.6 prescribes the process due to an attorney facing allegations of misconduct, including alleged violations of the Rules of Professional Conduct. That rule contemplates that the Court *en banc* would resolve allegations of misconduct after investigation by a special master or the *en banc* court itself, but never an investigation or adjudication by the complainant-judge. This rule necessarily avoids the present due process conundrum by entrusting the adjudication of the misconduct allegations to the *en banc* court, rather than to any individual judge before whom a case may be pending. The latent problems with this method of proceeding are compounded given that the inquiry pertains to statements the judge believes implicate his own integrity, as related more fully below.

14

average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Id.* (citing *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868, 881 (2009)).

The Supreme Court has determined that an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case. *See Murchison,* 349 U.S. at 136–137. This objective risk of bias is reflected in the due process maxim that "no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." *Id.* at 136.

The risk is at its apogee when the statements at issue touch personally on the judge's qualities, characteristics, or actions, such that the judge may become "personally embroiled" in the outcome of the charge. *See Offutt v. United States*, 348 U.S. 11, 17 (1954). In reversing a contempt conviction, the Supreme Court noted the special consideration due when the potentially offending words concern the same judge presiding over the contempt proceeding:

> Another feature of this case seems to call for remark. The power of contempt which a judge must have and exercise in protecting the due and orderly administration of justice, and in maintaining the authority and dignity of the court, is most important and indispensable. But its exercise is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions. This rule of caution is more mandatory where the contempt charged has in it the element of personal criticism or attack upon the judge. The judge must banish the slightest personal impulse to reprisal, but he should not bend backward, and injure the authority of the court by too great leniency. The substitution of another judge would avoid either tendency, but it is not always possible. Of course, where acts of contempt are palpably aggravated by a personal attack upon the judge, in order to drive the judge out of the case for ulterior reasons, the scheme should not be permitted to succeed. But attempts of this kind are rare. All of such cases, however, present difficult questions for the judge. All we can say upon the whole matter is that, where conditions do not make it impracticable, or where the delay may not injure public or private right, a judge, called upon to act in a case of contempt by personal attack upon him, may, without flinching from his duty, properly ask that one of his fellow judges take his place.

*Cooke v. United States*, 267 U.S. 517, 539 (1925) (internal citations omitted).

15

Case 6:21-cv-03219-MDH   Document 129   Filed 06/02/23   Page 19 of 24
Appellate Case: 23-2394   Page: 109   Date Filed: 06/07/2023 Entry ID: 5282773

Rule 8.2 is only violated if an attorney makes a statement which reflects personally on a judge, that is, "a statement that the lawyer knows to be false . . . *concerning the qualifications or integrity of a judge*[.]" (emphasis added). Here, the Court takes issue with statements calling him a "lone agenda-driven federal judge" and asserting that his decisions in this case will "clos[e] the courthouse doors." *See* First Show Cause Order [Docket No. 115]. Because we know the Court must decide—and has decided—that it perceives this as a factual attack on its very "integrity," rather than as an opinion, hyperbole, or analysis criticizing the basis for the decision, this implicates the complainant judge precisely in the areas where the Supreme Court in *Cooke* and *Offutt* warned due process may be offended: the same judge that is the subject of the statements adjudicates their character and truthfulness, and the mental state of the attorney making the statements.

Additionally, the First Amendment requires that the burden be placed on the complainant to prove to a neutral factfinder each element of a Rule 8.2 disciplinary violation, including falsity and the speaker's requisite mental state. *See* Plaintiffs' Response [Doc. 126] at 10-11, citing, *inter alia*, *Standing Comm. v. Yagman*, 55 F.3d 1430, 1438 (9th Cir. 1995). Yet here, the Court *is* the complainant and has shifted the burden to Ms. Hermann to prove to it that her Statements about the Court's own intent were *not* false, and that they were objectively reasonable.

Due process and the First Amendment considerations implicated in subjecting out of court political speech to potential reprimand require that Ms. Hermann be afforded the full process due under these unique circumstances by having a neutral adjudicator (or panel, under the Local Rules) determine whether she violated the Rules of Professional Conduct.

16

Case 6:21-cv-03219-MDH   Document 129   Filed 06/02/23   Page 20 of 24
Appellate Case: 23-2394   Page: 110   Date Filed: 06/07/23 Entry ID: 5285773
APPX 70

### b. Recusal is required under 28 U.S.C. § 455

For the same reasons recusal is required under the Due Process Clause, it is required under the general recusal statute, which codifies longstanding recusal principles. The statute provides, in relevant part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
>
> [. . .]

28 U.S.C. § 455.

Here, subsection (a) is the catch-all rule, and subsection (b)(1) is one of several specific provisions that overlap with it to some degree. Starting with subsection (b)(1), the Court has "personal knowledge of disputed evidentiary facts concerning the proceeding" because under the inquiry the Court has set up under Rule 8.2, only the Court can truly know the "factual" question of its own subjective intent in awarding fees.[4] To be clear, Plaintiffs maintain that this is not a matter of fact at all under Rule 8.2 and is instead counsel's own fair opinion and analysis about the Court's order awarding fees—analysis echoed in substantial Eighth Circuit briefing by Plaintiffs and numerous amici. Yet the Court's Second Order makes clear that it disagrees: under the disciplinary theory it is now investigating, the Court's own subjective intent has become the key piece of evidence. No party should be in position of having to prove to a factfinder the

---

[4] Such personal knowledge need not be derived from an extrajudicial source. *See Liteky v. U.S.*, 510 U.S. 540, 552, 114 S.Ct.1147 (1994) ("Recusal is required *whenever* there exists a genuine question concerning a judge's impartiality, and not merely when the question arises from an extrajudicial source.") (emphasis original). Nonetheless, the Court's internal convictions about its subjective intent when it awarded fees are untestable and derive from nowhere but the Court itself, and so by definition they are an "extrajudicial source," even if they are partially derivative of a court proceeding.

17

Case 6:21-cv-03219-MDH   Document 129   Filed 06/02/23   Page 21 of 24
Appellate Case: 23-2394   Page: 111   Date Filed: 06/07/2023 Entry ID: 5282773

opposite of what the factfinder has already decided with firm conviction: that very factfinder's own subjective intent. That is particularly true where the factfinder has already concluded that the "intent" directly implicates his own professional integrity and qualifications.

The problem under Rule 3.6 is similar: the Court is considering whether its own views regarding the Statements it found in the media—views it might hold six months from now or later, if the case is remanded to the Court—can render it so deeply biased against Plaintiffs that it results in "material prejudice." Again, only one person knows the answer to that question, and yet that same person sits as the Court in deciding whether it has been established for purposes of punishing an attorney. Further, if it were possible—let alone substantially likely—that media comments could exert such influence, recusal is all the more proper.

Finally, for the reasons set forth in Section II(B), *supra*, this has become a matter in which this Court's impartiality might reasonably be questioned. The Court has now decided, contrary to Ms. Hermann's intent as expressed in her apology letter and Plaintiffs' Response, that the Statements implicated its very integrity or qualifications: the core threshold inquiry for Rule 8.2. Any person's impartiality would reasonably be questioned in deciding whether criticism of his or her own integrity or qualifications had accurately struck home. And consistent with what would be expected from someone who feels indignation that their integrity has been impugned and must be vindicated, the Court has now shown that it views the stakes as very high: its Second Order shifts the inquiry from this particular decision—the subject of Ms. Hermann's actual Statements— into an overall examination of the Court's history in awarding fees in "constitutional claims." A reasonable observer might well conclude that this is not the inquiry a neutral factfinder (or, perhaps, the Western District en banc acting under the Local Rules) would order under Rule 8.2.

18

Case 6:21-cv-03219-MDH   Document 129   Filed 06/02/23   Page 22 of 24
Appellate Case: 23-2394   Page: 112   Date Filed: 06/07/23 Entry ID: 5285773 APP 72

In short, even if the Western District had no local rule on point, this has now become a matter that requires recusal under § 455.

### III. Plaintiffs respectfully request an administrative stay while this Court takes up this request.

A response to the Second Order is due in just one week. Plaintiffs respectfully request an administrative stay of the deadline to respond to the Second Order while the Court considers their requests, and an extension of their deadline to respond to that Order of 10 days from any decision by this Court declining to relinquish the matter to the Western District or recuse.

### CONCLUSION

For the foregoing reasons, this Court should: (i) cease its investigation and, in its discretion, refer or relinquish its investigation to the Western District *en banc*; or, alternatively, (2) recuse under the Due Process Clause or 28 U.S.C § 455. Plaintiffs ask for a brief administrative stay while the Court considers this request, with a new deadline of ten days from any decision declining to relinquish this matter or recuse.

Respectfully submitted this 2nd day of June, 2023.

/s/ Edward D. Greim
Edward D. Greim
MO Bar No. 54034
Graves Garrett LLC
1100 Main Street, Suite 2700
Kansas City, MO 64105
Telephone: 816-256-3181
edgreim@gravesgarrett.com

*Counsel for Plaintiffs & Kimberly Hermann*

19

Case 6:21-cv-03219-MDH    Document 129    Filed 06/02/23    Page 23 of 24
Appellate Case: 23-2394    Page: 113    Date Filed: 06/07/2023 Entry ID: 5285773

**CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail and/or facsimile. Parties may access the filing through the Court's electronic filing system.

/s/ Edward D. Greim
Edward D. Greim
Counsel for Plaintiffs

20

Case 6:21-cv-03219-MDH   Document 129   Filed 06/02/23   Page 24 of 24
Appellate Case: 23-2394     Page: 114     Date Filed: 06/07/2023 Entry ID: 5285773   APPX 74

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **BROOKE HENDERSON, et al,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 6:21-cv-03219-MDH** |
| | ) | |
| **SCHOOL DISTRICT OF** | ) | |
| **SPRINGFIELD R-12, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Before the Court is Plaintiffs' Motion to Refer or Recuse. (Doc. 129). On March 31, 2023, this Court granted Defendants' Motion for Attorney's Fees, after finding Plaintiff's lawsuit frivolous. (Doc. 107). Thereafter, Attorney Hermann, counsel for Plaintiffs, appeared on national media outlets and made several comments about the intent behind this Court's order on Defendants' Motion for Attorney's Fees. This Court then issued an Order to Show Cause, ordering Plaintiffs to show how Attorney Hermann's comments failed to violate several specific rules within the Missouri and Georgia Rules of Professional Conduct. (Doc. 115). Plaintiffs responded to this Court's order. (Doc. 126). This Court then issued a second Order to Show Cause ("Second Order"), finding Plaintiffs' response to this Court's first Order to Show Cause inadequately addressed any basis for Attorney Hermann's comments. The present Motion seeks from this Court a referral of any potential disciplinary matter to the Court *en banc*, or in the alternative, recusal from imposition of any discipline. As a basis for the request, Plaintiffs cite *inter alia* Fifth Amendment Due Process.

At the core of Plaintiffs' present Motion is the argument that this Court's Second Order "and its recasting of the original Order, makes clear that this is an investigation into Attorney Hermann for purposes of punishing her outside of the required process and protections of Local Rule 83.6." (Doc. 129 at 6).[1] Simply put, this is incorrect. This Court does not seek to impose any disciplinary action against Attorney Hermann outside procedure described in Local Rule 83.6. Rather, this Court simply seeks to substantiate whether it is reasonable to believe a violation of Missouri Rule of Professional Conduct 4-8.2 has occurred. Missouri Rule of Professional Conduct 4-8.2 prohibits, *inter alia,* statements from attorneys about the integrity of a judge made with reckless disregard of the truth. Whether an attorney's specific statements violate Rule 4-8.2, of course, hinges on any basis an attorney may have had for making certain statements. It is impossible to discern whether referral is appropriate without an understanding whether certain statements reflect a reckless disregard for truth. This requires a basic understanding of why certain statements were made and how, if at all, the attorney believed them to be true. Without such an understanding, it remains impossible to determine whether sufficient evidence exists to pursue a fuller investigation and disciplinary proceeding at the *en banc* level pursuant to Local Rule 83.6. Put differently, this Court's Second Order seeks some level of substantiation as to whether a violation has occurred, before determining whether to refer the matter to the Court *en banc* for an

---

[1] Plaintiffs also cite how this Court's Second Order requires "Attorney Hermann" to respond rather than "Plaintiffs." Plaintiffs contend this shows the Court seeks to impose discipline on Attorney Hermann apart from the process outlined in Local Rule 83.6. Plaintiffs are again incorrect. While Attorney Hermann is of course not a party to the underlying dispute, Attorney Hermann's comments and any disciplinary matter that may result, are related to, but separate from, the underlying constitutional claims in the original lawsuit. The Second Order required a response from "Attorney Hermann" rather than "Plaintiffs," simply for clarity's sake. While Attorney Greim has entered his appearance on behalf of Plaintiffs (Doc. 125), Plaintiffs have made clear they have sought counsel from Attorney Greim for representation on the issues discussed in this Court's Order to Show Cause. (Doc. 116).

investigation. This is entirely consistent with the text of Local Rule 83.6(d)(1), which reads as follows.

> When misconduct, or allegations which, if substantiated, would constitute misconduct, on the part of an attorney admitted to this Bar come to the attention of a judge, whether by complaint or otherwise, and the applicable procedure is not otherwise mandated by this Rule, the Judge may initiate a disciplinary investigation. If the misconduct or allegations come to the attention of the Clerk, the Clerk shall refer the matter to the Chief Judge, who may initiate a disciplinary investigation.

Not only does the above text emphasize the importance of *substantiating* possible misconduct, but also it provides this Court with the ability to initiate a disciplinary investigation. This Court does not lightly undertake the decision to make an ethics referral to the Court *en banc*. The information requested in the Second Order will assist this Court in determining if referral to the Court *en banc*, a state bar's disciplinary counsel, or both, is appropriate. The Court's initial Order to Show Cause as well as the Second Order in fact effectuate part of the disciplinary process outlined in Local Rule 83.6: substantiating possible misconduct. Ordering a party to show cause in an instance such as this does not appear uncommon. *See, e.g., In re Fletcher,* 424 F.3d 783, 789 (8th Cir. 2005) (court ordered attorney to show cause as to why he should not be sanctioned then forwarded matter to Western District pursuant to rule 83.6(d)). Plaintiffs also seek an administrative stay of this matter. The Court, however, finds no reason to further delay resolution. The Court also finds no reason to recuse itself from this case more broadly. If Plaintiffs are successful on appeal, this Court is willing and able to handle future proceedings objectively, consistent with any order from the Eighth Circuit.

## CONCLUSION

For foregoing reasons, Plaintiffs' Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 6, 2023                                         _/s/ Douglas Harpool_____

**DOUGLAS HARPOOL**

**United States District Judge**